James Lee DAVIS *v.* STATE of Arkansas

CA CR 79-115 594 S.W. 2d 47

Opinion delivered January 30, 1980
Released for publication February 20, 1980

*Edwin A. Keaton*, for appellant.

*Steve Clark*, Atty. Gen., by: *Ray Hartenstein*, Asst. Atty. Gen., for appellee.

Marian F. Penix, Judge. Appellant Davis appeals from a jury conviction on Aggravated Robbery and a sentence of 25 years. He appeals also from a sentence of an additional two years upon the revocation of probation.

Davis was charged with the robbery of the First Na-

tional Bank Main Branch of Camden, Arkansas which occurred April 23, 1979. On January 31, 1979, Davis pled guilty to a charge of Criminal Use of a Prohibited Weapon. He was fined $100 and placed on five year probation. A Petition for Revocation of Probation was filed and scheduled to be heard April 25, 1979. Davis' court appointed counsel moved for a continuance and it was granted. On May 4, 1979, Davis' attorney filed a Notice of Defense stating he intended to raise a defense to the bank robbery charge and to the alleged violations of conditions of probation, his lack of capacity as a result of mental disease or defect, to conform his conduct to the requirement of law and to appreciate the criminality of his conduct. On May 4, the trial court ordered Davis committed to the Arkansas State Hospital for observation and examination. On May 22, Davis filed a Motion for Continuance to enable his counsel to acquire medical information and records relative to Davis' prior commitment in a mental institution in Buffalo, New York in January, 1978, and because no report had yet been issued by the Arkansas State Hospital. Before trial, Davis received the State Hospital report. On June 22, 1979, Davis was convicted.

I

Davis contends there was error in the court's denial of the Motion for Continuance to secure the medical records from New York and to secure records of Davis' military service.

Davis contends he was forced to trial without proper preparation. Not guilty by reason of mental disease or defect must be proven by a preponderance of the evidence. Davis' attorney received a discharge diagnosis summary from New York which described Davis' "acute schizophrenic episode". It noted that Davis had been brought to the New York Medical Center following his appearance at a TV station where he posed as an FBI agent. It noted that Davis did this because voices told him to do so. It also pointed out Davis' thought content was delusional and he complained of hearing voices and seeing things. The New York doctors were the only ones who examined and treated Davis for a condition where Davis complained of committing an unlaw-

ful act upon the command of voices. Davis' attorney sought to obtain the New York hospital's supporting data and basis for its diagnosis as noted in the discharge summary. Because of certain required procedures Davis' attorney had not yet received the data and records. The trial court refused to allow a continuance, finding the reports of the Arkansas doctors were sufficient for a determination by the jury. The Arkansas doctors' testimony was that Davis was without psychosis. Also, the court found whatever the New York reports contained would be *added* evidence only to that already introduced and were unnecessary to Davis' defense.

The court noted that on the issue of insanity Davis had the State Hospital report of May 24, 1979 which indicated he was without psychosis, able to assist in his defense and probably sane at the time of the offense. Further, Davis had the reports from the South Arkansas Mental Health Center stating on August 19, 1977 and December 15, 1978, Davis was without psychosis and able to assist in his defense. With the additional discharge summary from New York, the trial court concluded there was adequate medical information on the issue of insanity and therefore denied the motion for continuance.

Factors which must be considered by trial courts in exercising their discretion in granting or denying a motion for continuance are the probable effect of the testimony or evidence, the likelihood of procuring the evidence, and its relevancy. *Worley* v. *State*, 259 Ark. 433, 533 S.W. 2d 502 (1976). There was no showing if the evidence did exist and was obtained that it would be relevant to the issue of Davis' sanity at the time of the offense and at trial.

Davis relies on *Westbrook* v. *State*, 265 Ark. 736, 580 S.W. 2d 702 (1979). However, in the instant case, Davis was not denied crucial evidence. In *Westbrook*, the defendant had asked for records from the State Hospital relative to two prior commitments. He had been granted the same on paper but had not received the records at the time of trial. Davis had in his possession all the state medical records pertinent to his mental condition. He was not denied evidence which was crucial to his defense. Here there is no showing that

there was additional material evidence obtainable. We cannot say the trial court abused its wide discretion in refusing a further continuance.

## II

Davis contends the court erred in denying Davis' challenges for cause against two prospective jurors.

The prosecuting attorney was questioning the prospective juror Willie Arnold. Mr. Arnold stated in reference to finding Davis guilty or innocent he (Arnold) would "go along with the bunch". Davis contends that under the rationale of *McCree* v. *State*, 266 Ark. 465, 585 S.W. 2d 938 (1979), Mr. Arnold should have been excused. In *McCree*, the Supreme Court held it was proper for the trial court to excuse for cause a prospective juror who indicated he was unequivocally opposed to the death penalty. In that case the state was seeking the death penalty.

In reviewing the entire exchange during voir dire it appears Mr. Arnold misunderstood what was required of him as a juror. The court explained to him what his duty was and determined Arnold would in fact stick by what he felt was right regardless of what the other jurors thought.

In questioning the prospective juror Sylvia Nutt, Ms. Nutt stated she could not definitely say she would not be biased because she herself had been a victim of a theft. In response to the trial court's questions, she did indicate she would try her best to be fair and impartial to both the State and to Davis, and there was no indication she had already made up her mind as to Davis' guilt or innocence. There is no evidence she had made a pre-judgment.

Our Supreme Court has allowed large discretion in the trial court's determination of a prospective juror's bias or prejudice as affecting his qualifications to serve. The question of the impartiality of the jury is a judicial question of fact within the sound discretion of the trial court. *Strode* v. *State*, 257 Ark. 480, 517 S.W. 2d 954 (1975).

## III

Davis alleges error in the court's answer to the jury on its query during deliberations.

Prior to rendering a verdict the jury returned and asked:

The jury is concerned that if by chance the young man is incarcerated, is it possible he will receive some form of psychiatric help while he is in prison?

The court's response was:

All right, now, ladies and gentlemen, the only way I can possibly answer that question is that the Department of Corrections is operated by a Board of Corrections, which is a part of the executive branch of government. The judicial branch of the government, or the Courts, have no control over the Department of Corrections.

The Department of Corrections of course has the authority to administer such medical or mental services as they may be deemed the inmates might need. That's as far as I'm permitted by law to answer that question, because I could give you no guarantee one way or the other, certainly.

We find nothing in the court's response which could be construed as erroneously invading the province of the jury. See *Moore* v. *State*, 231 Ark. 672, 331 S.W. 2d 841 (1960).

Finding no reversible error, we affirm.

Affirmed.

HOWARD and NEWBERN, JJ., dissent.

GEORGE HOWARD, JR., Judge, dissenting. I dissent inasmuch as I am of the view that the trial court erred in not excusing Mrs. Sylvia Jo Nutt for cause, over the objections of appellant's attorney, which required the defendant to

exercise one of his peremptory challenges in order to excuse Mrs. Nutt from serving as a juror.

During voir dire, the following exchange took place between the attorney for appellant and Mrs. Nutt:

MR. KEATON: Have either of you been either the victim of a robbery or had one of your friends or relatives, loved ones, who have been the victim of a crime, robbery or any type of crime?

MRS. NUTT: We had a robbery. We had a robbery last year. Our property was returned to us quickly.

. . .

MR. KEATON: Okay, do you think that's going to cause you any I guess, somewhat sympathetic feeling toward another victim who is the victim I guess of — what appears to be the victim of a crime.

MRS. NUTT: I hope not.

MR. KEATON: You think it might cause a few problems?

MRS. NUTT: Well I hope that it wouldn't. But I can't say definitely that it would.

MR. KEATON: Okay, I guess what you're really saying is that it might?

MRS. NUTT: There's a far out chance that it might.

MR. KEATON: Okay. Even though like you already heard the Court instruct you as to what the law is and you know, what your duties are, and even after considering that, you still I guess in your mind, would be saying a slight reservation that it might cause you some problems to be somewhat sympathetic to I guess First National Bank.

MRS. NUTT: I'd make every effort for it not to be.

The following exchange took place between the Court and Mrs. Nutt:

THE COURT: Mrs. Nutt, if you were selected to serve on this jury, could you go into the jury box and be both fair and impartial to both the State of Arkansas and this defendant?

MRS. NUTT: I would hope so. I would try my best to.

THE COURT: Okay. In other words, now we're here to listen to the witnesses tell us what happened.

MRS. NUTT: That's right.

THE COURT: Because something happened last month, last year, ten years ago to you, is not going to affect you in determining the innocence or guilt of this defendant, would it? It could have no bearing, could it?

MRS. NUTT: It had no bearing on what happened to me. I hope that I'd be able to separate that from my own personal experience.

THE COURT: So you keep saying 'hope,' and 'try' and all that, and what — I guess I'm at a loss to understand how it could affect what the facts in this case are.

MRS. NUTT: I'm a real bad person at being able to see both sides.

THE COURT: You want to see both sides, and that's what both of them want you to see, and if you go in the jury box, will you listen to what the witnesses say, and determine guilt or innocence, solely on the basis of what you hear from the witness stand?

MRS. NUTT: I think I could. I can't be any more

definite than that.

THE COURT: I realize — I say it's just like my wife, I think. Will you? Let me put it that way.

MRS. NUTT: I will.

THE COURT: All right. I think that she's being as honest as she can be, and I think we sometimes nitpick as I call it with jurors when they are trying to be honest. and say, 'I really think I can,' and I believe you can, and having known you for a long time, I believe you can. Your challenge is denied and your exceptions is saved.

Inasmuch as it is plain from the record that appellant ultimately exhausted all of his challenges, the ruling of the trial court may not be characterized as harmless error.

In *Glover* v. *State*, 248 Ark. 1260, 455 S.W. 2d 670, our Supreme Court made it clear that every accused is entitled to a fair trial by a panel of impartial and indifferent jurors. A failure to accord an accused this right violates the standards of due process.

DAVID NEWBERN, Judge, dissenting.

DAVID NEWBERN, Judge, dissenting. I believe the trial court's abuse of discretion in denying the appellant a continuance for the purpose of attempting to obtain additional medical evidence from New York was patent. I can, in no meaningful way, distinguish this case from *Westbrook* v. *State*, 265 Ark. 756, 580 S.W. 2d 702 (1979), and the majority opinion certainly does not do so.

In *Westbrook*, the accused sought medical notes which Arkansas hospital diagnoses were based upon. The supreme court held refusal to grant a continuance to permit the defendant to obtain them was error.

I do not know what the trial judge meant by "added evidence." If he meant "cumulative evidence," I think he was wrong. A discharge summary showing a "schizophrenic episode" is hardly the kind of powerful evidence the detailed medical notes leading to that diagnosis might have been. The

appellant needed that evidence because it, unlike the local reports, was indicative of his condition prior to the alleged offense. It apparently would have been as diametrically opposed as possible to the reports of the Arkansas agencies with respect to the probable condition of the appellant at the time the offense was committed. Thus, I cannot agree that it would in any way have been cumulative. For the very reason that it would have been "added evidence," I believe it was necessary to grant the continuance.

Nor does it matter that the appellant did not know for certain he could obtain the reports he sought. Note the language of the opinion in the *Westbrook* case:

> Due to the nature of the defense we feel it was necessary that appellant have these records, *if they exist*, in order to fully prepare his defense. . . . It may be that something in these records would have enabled appellant to furnish stronger proof on his behalf. [580 S.W. 2d at 707. Emphasis supplied.]

For this reason, I dissent.