Bradford Lee COOLEY *v.* STATE of Arkansas

CA CR 81-150                                629 S.W. 2d 311

Court of Appeals of Arkansas
Opinion delivered March 17, 1982
[Rehearing denied April 7, 1982.*]

*CORBIN and GLAZE, JJ., would grant the petition.

*Eilbott, Smith, Eilbott & Humphries,* for appellant.

*Steve Clark,* Atty. Gen., by: *William C. Mann, III,* Asst. Atty. Gen., for appellee.

MELVIN MAYFIELD, Chief Judge. Bradford Lee Cooley was convicted in a jury trial of the crimes of burglary and criminal attempt to commit rape and was sentenced to a term of 13 years on each charge to run consecutively. He argues five points for reversal.

I. Appellant's first point is that the trial court should have excused for cause a juror who was employed at the same institution as the prosecuting witness and that he was prejudiced by having to exercise a peremptory challenge to remove that juror.

We find no error. The record shows that the trial judge questioned the juror concerning her ability to listen to the testimony and instructions and follow the law and, based on her positive responses, refused to excuse her. As we said in *Davis* v. *State,* 267 Ark. 1159, 1162, 594 S.W. 2d 47 (Ark. App. 1980):

> Our Supreme Court has allowed large discretion in the trial court's determination of a prospective juror's bias or prejudice as affecting his qualifications to serve. The question of the impartiality of the jury is a judicial question of fact within the sound discretion of the trial court. *Strode* v. *State,* 257 Ark. 480, 517 S.W. 2d 954 (1975).

In addition, our Supreme Court has held that no prejudice results unless it is shown that the complaining party has been forced to accept a juror against that party's wishes. *Conley* v. *State,* 270 Ark. 886, 607 S.W. 2d 328 (1980); *Kirk* v. *State,* 270 Ark. 983, 606 S.W. 2d 755 (1980). In the instant case the record shows that only three jurors were called after appellant had exercised his last peremptory challenge. Two of the three were excused by the state and both the state and the appellant announced that the third one was "good."

II. With his second point appellant questions the court's ruling that appellant's previous convictions involving the use of a credit card could be introduced for impeachment purposes.

Appellant had been convicted in 1972 of four offenses of forgery and uttering for a total amount of $67.79, received a three-year sentence with one year suspended, and was subsequently paroled. He argues, based on the fact that almost ten years had elapsed since his convictions and on the small monetary amount involved, that the probative value of that evidence was outweighed by its prejudicial effect and should have been excluded under Rule 609 of the Uniform Rules of Evidence.

We are not convinced that prejudicial error was com-

mitted on this point. The prior convictions were for crimes involving dishonesty or false statement and less than ten years had elapsed. Rule 609 clearly permits the admission of such evidence. In *Young* v. *State*, 269 Ark. 12, 598 S.W. 2d 74 (1980), it is said that the trial court is accorded a wide discretion in determining whether the probative value of evidence outweighs its prejudicial effect and "we do not reverse absent an abuse of discretion."

III. The next alleged error concerns the violation of the witness-exclusion rule.[1]

After a witness had testified that he and the appellant were at the victim's home the *night before* the alleged assault, the witness, in a discussion outside the courtroom with the deputy prosecuting attorney and a police officer, was shown a prior statement where he said they were at the home *two weeks* before the incident. Over defense objection, the witness was recalled to the stand and testified that he was in error in his previous testimony and that he and appellant actually were at the victim's home two weeks before the incident. The officer involved in "refreshing" the witness' memory was also allowed to testify, over objection, and said he took the prior statement and at that time the witness said he and appellant were at the victim's home two weeks before the alleged assaults. Both witnesses were thoroughly cross-examined and admitted the outside-the-courtroom discussion.

During an in-chambers hearing on motions for mistrial and to strike, both of which were overruled, the trial judge stated the discussion should not have taken place but it was fairly obvious that the witness did make a mistake in his

---

[1]At one time Ark. Stat. Ann. § 28-702 (Repl. 1979) was the only statutory authority for the exclusion of witnesses from the courtroom during trial. Although a part of the Civil Code of 1869 it was followed in criminal cases but its application was discretionary. Act 243 of 1955 made the rule mandatory in criminal trials. *Vaughn* v. *State*, 252 Ark. 505, 479 S.W. 2d 873 (1972); *Chambers* v. *State*, 264 Ark. 279, 571 S.W. 2d 79 (1978). The act is codified as Ark. Stat. Ann. § 43-2021 (Repl. 1977) but *Gustafson* v. *State*, 267 Ark. 278, 284, 590 S.W. 2d 853 (1979) says it has been replaced by Rule 615 of the Uniform Rules of Evidence. Undoubtedly Rule 615 has also replaced Ark. Stat. Ann. § 28-702 in civil cases.

testimony; that the court, although the rule had been invoked, also made a mistake by failing to instruct the witnesses not to talk to anybody; that it did not seem to be of any great importance whether it was two weeks or the night before; and that it was all a matter of credibility.

The state argues that no reversible error occurred and cites *Williams* v. *State*, 258 Ark. 207, 523 S.W. 2d 377 (1975); *Cantrell* v. *State*, 265 Ark. 263, 577 S.W. 2d 605 (1979) and *Perez* v. *State*, 249 Ark. 1111, 463 S.W. 2d 394 (1971). *Williams* and *Cantrell* represent the general rule which holds that a violation of the rule goes to credibility, rather than competency; that the trial court's discretion in such matters is not generally disturbed; but that its discretion is more readily abused by exclusion of the testimony than by admitting it. In fact, *Williams* says "We have been unable to find any case in which this court has sustained the action of a trial court excluding the testimony of such a witness."

However, *Williams* and *Cantrell* are expressly bottomed on the proposition that the witness' violation occurred "through no fault of, or complicity with, the party calling him." Here, the appellant says, counsel for the state was a direct participant in the violation. But in the *Perez* case a witness who had finished testifying was reminded by the court that he was subject to the rule and was told not to discuss the case with anyone. Later, in the presence of that witness, the deputy prosecuting attorney discussed with other witnesses testimony to be given by them. The trial court refused to grant a mistrial and this was affirmed on the basis that "in the absence of any showing of prejudice to the defendant, we cannot say the circuit judge abused his discretion."

In view of the statements made by the court in ruling on this matter and in light of the law revealed in the above cases, we must agree that no reversible error occurred. While we do not approve of the outside-the-courtroom colloquy in this case we have to recognize that this did not change the testimony of the victim who testified that it was two weeks before the assault that this "refreshed" witness and the appellant were at her house. In addition, as we have noted,

both the witness and the police officer were thoroughly cross-examined and admitted what had happened outside the courtroom.

Our witness-exclusion rule, Uniform Evidence Rule 615, is the same as Rule 615 of the Federal Rules of Evidence. In applying that rule to a similar factual situation in *Brown v. United States*, 388 A. 2d 451, 456 (D.C. Cir. 1978) the court said:

> We consider here a situation in which the prosecutor arranged a meeting between a potential government witness, Detective Miller, and Frank Adams, a witness who had already testified. . . . it would have been within the court's discretion to have found it a violation of its sequestration order by the government and to have excluded (a) any further testimony by Mr. Adams and (b) any testimony at all by the detective. Instead of excluding either or both of these witnesses, however, the trial court spread the entire matter of the prosecution's action before the jury and permitted comprehensive cross-examination of the witnesses on this issue. While we recognize that the prosecutor could have presented the facts to the jury in a manner which would have avoided violating the rule on witnesses, we are not prepared to say that the way the trial court chose to deal with this matter provides grounds for reversal.

And finally, on this point, we note that an offender may be proceeded against by contempt for the violation of an order of a court. But if we reverse and remand this case for a new trial because the testimony of the "refreshed" witness was improperly influenced, would the effect of that influence be erased? Or would the result be a new trial without the testimony of this witness? We do not believe that the draconian solution of a new trial is required in this case.

IV. Appellant's next contention is that a mistrial should have been declared because of the following contact made by a juror with the deputy prosecuting attorney: The prosecutor and defense counsel came back up the elevator during the noon hour. A juror stopped the prosecutor to ask

a question. He was told he could do so as long as it was not about the trial. The juror then asked where he could go to get a hot check taken care of and was directed to the prosecutor's office down the hall.

The appellant's attorney told the judge that he was within hearing distance of this incident and there is no question about what was said. It is appellant's contention, however, that the occurrence revealed a lack of impartiality on the part of the juror and constituted a quid pro quo offer for assistance.

In *Bealmear* v. *State*, 104 Ark. 616, 150 S.W. 129 (1912) the court refused to reverse a conviction because the prosecuting attorney bought some of the jurors and two of the defendant's counsel a drink of limeade. The court said opinions might differ as to the propriety of the prosecuting attorney's action but the case would not be reversed on that account where it was shown that nothing was said which would tend to prejudice the rights of the parties.

Here, there was no discussion between the juror and the prosecutor about the case. A mistrial should be granted only where there has been an error so prejudicial that justice could not be served by continuing the trial. This is a matter which lies within the sound discretion of the trial judge and should not be disturbed unless an abuse of that discretion is shown. *Chaviers* v. *State*, 267 Ark. 6, 588 S.W. 2d 434 (1979). We do not think the trial court's action should be reversed on this point.

V. The final contention is that the court erred in refusing to prohibit the prosecutrix's in-court identification of appellant. This contention is based on the argument that the in-court identification should have been suppressed because it was tainted by an unduly suggestive show-up.

This show-up was conducted approximately one and one-half hours after the alleged offense was committed, when appellant was transported in a police vehicle to the prosecutrix's home, and stood, handcuffed, beside the police car some 20 feet away from the front door of the house where

she was standing. Appellant contends that, considering the previous brief periods the prosecutrix had seen him, her emotional state shortly after the alleged incident, the poor lighting conditions during the incident, and the circumstances of the show-up, the in-court identification should have been suppressed.

There is not much question about the law on this point. Any identification procedure that is so unnecessarily suggestive that it leads to a substantial likelihood of mistaken identification of the accused violates his right to due process of law granted by the Fourteenth Amendment to the United States Constitution. *Manson* v. *Brathwaite,* 432 U.S. 98, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977); *Beed* v. *State,* 271 Ark. 526, 609 S.W. 2d 898 (1980): *James & Elliott* v. *State,* 270 Ark. 596, 605 S.W. 2d 448 (1980). *James & Elliott,* cited by appellant, explains how this works.

> It is the likelihood of misidentification that taints the out-of-court identification process. In determining whether an in-court identification is tainted by pretrial occurrences, we consider the totality of the circumstances. In doing so, we consider the opportunity of the identifying witness to observe the accused at the time of the criminal act; the lapse of time between the occurrences and the identification; any inconsistencies of the description given by the witness; whether there was prior misidentification; the facts surrounding the identification; and all matters relating to the identification process. . . . We have stated reliability is the linchpin in determining the admissibility of identification testimony. In the determination of the admissibility we consider the totality of the circumstances. . . . In *Neil* v. *Biggers,* 409 U.S. 188 (1973), it was held that a "show-up" rather than a line-up does not violate a defendant's constitutional right unless there are other circumstances rendering the identification unreliable.

In the instant case the prosecutrix testified she had seen the appellant on two occasions prior to the alleged assault. One time was two weeks before the incident when he was at her house with the "refreshed" witness, Larry Reynolds,

and the other was a few days later when he came to her house alone and they had a brief conversation at her door. She also said she recognized appellant on the morning of the assault. This occurred, she said, on April 3, 1980, about 5:30 a.m.; that there was enough light from a bathroom and from daylight coming through the bedroom windows for her to recognize appellant; that he threatened to cut her throat; that they struggled about ten minutes; and that she finally kicked him off the bed and he jumped up and ran out of the house.

It was stipulated that she notified the police and told them that her assailant had been to her house with the witness Larry Reynolds; that he was contacted and gave them appellant's name; and that shortly afterwards the appellant was brought to the prosecutrix's house for the show-up.

We conclude as did *James & Elliott* v. *State*:

> We recognize there is a real danger of undue suggestiveness in a "show-up" identification, and such method should not ordinarily be arranged. We cannot say from the totality of the circumstances here involved that the "show-up" tainted the in-court identification sufficiently to render it inadmissible.

The judgment is affirmed.

COOPER, J., concurs.

CORBIN, J., dissents and would reverse and remand on Points III and IV.

GLAZE, J., dissents and would reverse and remand on Point III.