Cite as 2019 Ark. App. 501

# ARKANSAS COURT OF APPEALS

DIVISION I

**No.** CR-19-281

| | |
|---|---|
| FREDRICK BRUCE BARFIELD<br>APPELLANT | **Opinion Delivered:** October 30, 2019 |
| | APPEAL FROM THE GARLAND COUNTY CIRCUIT COURT [NO. 26CR-16-130] |
| V. | |
| | HONORABLE MARCIA R. HEARNSBERGER, JUDGE |
| STATE OF ARKANSAS<br>APPELLEE | AFFIRMED |

## PHILLIP T. WHITEAKER, Judge

Appellant Fredrick Bruce Barfield was convicted of second-degree sexual assault by a Garland County jury and was sentenced to ten years' probation and a fine of $3,500 by the circuit court. On appeal, Barfield challenges both the sufficiency of the evidence supporting his conviction and the manner in which he was sentenced. We find no error and affirm.

### I. *Sufficiency of the Evidence*

In his first point on appeal, Barfield argues that the State failed to present sufficient proof that he committed the offense of second-degree sexual assault. Our standard of review for a sufficiency challenge is well settled. We treat a motion for directed verdict as a challenge to the sufficiency of the evidence. *King v. State*, 2018 Ark. App. 572, 564 S.W.3d 563. In reviewing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the State and consider only the evidence that supports the verdict.

*Id*. We affirm a conviction if substantial evidence exists to support it. *Id*. Substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other without resorting to speculation or conjecture. *Id*.

Barfield was charged with second-degree sexual assault over allegations that he engaged in sexual contact with a twelve-year-old girl. A person commits the offense of sexual assault in the second degree if, being eighteen years or older, he engages in sexual contact with another person who is less than fourteen years old and not his spouse. Ark. Code Ann. § 5-14-125(a)(3) (Repl. 2013). It was undisputed at trial that Barfield is over the age of eighteen and that the victim, S.H., was twelve years old at the time of the assault and was not Barfield's spouse.

Barfield's specific challenge to the sufficiency of the evidence at trial and on appeal is that the State failed to prove that he engaged in sexual contact. "Sexual contact" means "any act of sexual gratification involving the touching, directly or through clothing, of the sex organs, buttocks, or anus of a person or the breast of a female." Ark. Code Ann. § 5-14-101(10). More particularly, he argues that the State failed to prove that any action he undertook with S.H. was for the purpose of sexual gratification.

We therefore turn to the proof that the State presented at trial. Barfield was dating Judy Blake, the mother of S.H., and would sometimes spend the night at Blake's apartment. One Friday in November 2014, Barfield spent the night. S.H. slept on the living-room couch that night. The next morning, Barfield came into the living room and began touching her. Initially, he touched S.H.'s breasts over her clothes. When she asked him to stop, he grabbed her by the waist, held her down, and put his hand under her shirt and began

2

touching and squeezing her breast. S.H. eventually slapped him and said she was going to go tell her mother what happened; Barfield told her not to tell anyone.

S.H. did not follow Barfield's admonition to stay quiet. She told her sister and her mother what happened. Blake confronted Barfield by asking, "Did you do it?" Barfield responded that he might have "brushed up against her." Blake confirmed with S.H. the details of what happened, and S.H. told her mother that Barfield "kept his hand there a whole lot longer than just brushing up against her." When Blake confronted Barfield a second time about what S.H. had said, he replied, "Well, yeah, but I was trying to teach her how to say no 'cause she touched me first." Blake then reported the assault to the Child Advocacy Center.

After the assault was reported, the authorities investigated Barfield. He provided a recorded interview to the Child Advocacy Center,[1] during which he acknowledged that S.H. had accused him of touching her breasts. He initially alleged that S.H. had instigated the contact,[2] but he eventually admitted grabbing her by the head and "making circle moves" on her breast and nipple. He maintained, however, that he was trying to "freak her out where she'd say no."

Barfield was subsequently interviewed by the Hot Springs Police Department.[3] Once again, Barfield admitted that he had touched and rubbed S.H.'s nipple "about close to a

---

[1]A recording of that interview was played during trial.

[2]In her testimony, S.H. denied that she was the instigator of any contact between her and Barfield.

[3]A video of this interview was also introduced at trial.

minute." He continued to claim, however, that he had only done so to "educate her" about how to say no.

On appeal, Barfield acknowledges that he touched S.H.'s breast, but he contends that this fact alone is not enough to sustain a conviction. He argues that in addition to the physical touching, the State had to prove that he did so for the purpose of sexual gratification. He contends that the State failed to prove that his touching of S.H.'s breast was for such a purpose.

Arkansas Code Annotated section 5-14-101(10) does not expressly define "sexual gratification." Our supreme court, however, has addressed the topic. In *McGalliard v. State*, 306 Ark. 181, 182–83, 813 S.W.2d 768, 769 (1991), the court explained the meaning of the term in the context of a rape case:

> "Sexual" is defined in *Webster's Third International Dictionary*, unabridged (1961), as "of or relating to the male or female sexes or their distinctive organs or functions" or "of or relating to the sphere of behavior associated with libidinal gratification." "Gratification" is defined as "something that pleases." *Id*. When construed in accordance with their reasonable and commonly accepted meaning, and in context with the specific acts described in section 5-14-101(8), the words leave no doubt as to what behavior is prohibited under the statute.

More pointedly, our supreme court has held that it is not necessary for the State to provide direct proof that an act is done for sexual gratification if it can be assumed that the desire for sexual gratification is a plausible reason for the act. *Warren v. State*, 314 Ark. 192, 196, 862 S.W.2d 222, 225 (1993); *see also Ross v. State*, 2010 Ark. App. 129, at 4 ("Our case law makes clear that when sexual contact occurs, and there is no legitimate medical reason for it, it can be assumed that such contact was for sexual gratification and the State need not offer direct proof on that element.").

Here, Barfield cites his own statements to investigators that he did not touch S.H. for his own sexual gratification but for her sexual education, and he suggests that the real question in this case is whether his act of touching S.H. was "a poor decision or a crime." The jury, however, was not required to believe Barfield's stated intent. *See Brown v. State*, 374 Ark. 341, 344, 288 S.W.3d 226, 230 (2008) ("Even though Appellant denied the allegations of sexually assaulting his daughter, the jury is not required to believe his self-serving testimony."). Instead, the jury was free to look at all the evidence, which included testimony that he continued to touch S.H.'s breast after she told him to stop, that he told her not to tell anyone what had happened, and that he initially minimized the act but confessed when confronted by S.H.'s mother. *See Sorum v. State*, 2017 Ark. App. 384, 526 S.W.3d 50 (holding that the jury was free to reject defendant's argument that he was "just messing around" and could reasonably conclude that defendant's actions were taken in an effort to achieve sexual gratification). Substantial evidence supports Barfield's conviction for second-degree sexual assault, and we therefore affirm on this point.

## II. *Sentencing*

In his second point on appeal, Barfield challenges the circuit court's decision to sentence him to ten years' probation and a $3,500 fine. Barfield was charged with a Class B felony. As a result, he faced a sentencing range from five to twenty years in prison, a fine of up to $15,000, or both. He now appeals his sentence to probation.

## A. Sentencing Procedure

To understand Barfield's argument, we will lay out the events that surrounded his sentencing. We begin by noting that Barfield clearly sought probation as an alternative

5

sentence pursuant to Arkansas Code Annotated section 16-97-101(4) (Repl. 2016). While the jury was deliberating Barfield's guilt or innocence, the parties discussed sentencing instructions with the court. Barfield asked the court "for the alternative sentence of probation" and requested that the jury be provided a verdict form for that as well. The court agreed.

After the jury returned with its guilty verdict, the trial proceeded to the sentencing phase, during which Barfield testified on his own behalf and personally asked the jury for probation. In his closing argument, his counsel asked the jury to impose probation. Barfield does not dispute that he sought probation as an alternative sentence, but he nonetheless argues that the court erred in giving him probation. We find no merit to his argument.

We find no error in the court's sentencing instructions. The court instructed the jury that second-degree sexual assault is punishable by imprisonment in the Arkansas Department of Correction for not less than five years and not more than twenty years, or by a fine not to exceed $15,000, or by both imprisonment and a fine. The court instructed the jury to complete the appropriate verdict form, AMI Crim. 2d 9303-VF, which reflects those sentencing options. Then, at Barfield's request, the court instructed the jury as follows:

> [Mr.] Barfield may also contend that he should receive an alternative sentence of probation. You may recommend that he receive [an] alternative sentence of probation, but you are advised that your recommendation will not be binding on the court.
>
> If you recommend an alternative sentence, you shall indicate on the verdict form which is at the front of your book which reads: "We, the Jury, recommend the alternative sentence of probation," and that would be again signed by [the foreperson].

With these instructions, the jury retired to deliberate sentencing and returned about an hour later with a verdict. Unfortunately, the jury completed only the verdict form for alternative sentencing, recommending a sentence of probation without specifying a number of years of probation. Moreover, the jury had not completed AMI Crim. 2d 9303-VF. The court informed counsel that it was going to send the jury back and tell them that they had to fill out both verdict forms; the defense and the State agreed. The court directed the jury to complete both forms and sent them back once again for deliberation. We find no error in how the court handled the jury's confusion concerning the verdict forms.

When the jury returned from deliberations, it handed the court its second verdict form. This form read, "We, the jury, having found Fredrick Bruce Barfield guilty of Sexual Assault in the Second Degree, fix his sentence at a fine of thirty-five hundred dollars." At this point, the court possessed two completed jury verdict forms: one recommended probation for an unspecified term, and the other recommended a fine with no imprisonment.

The court then called counsel to the bench to discuss the jury verdicts and whether to impose the fine or the term of probation. The court stated, "Either we do a fine and we're done or we do probation and we agree to the conditions and agree to [set] the time at . . . a sentencing hearing. Or, we give it back to them and tell them they have to have a term for probation." Neither the defense nor the State wanted to resubmit the matter to the jury. After much discussion, both the State and Barfield, through his counsel, agreed to allow the court to sentence Barfield to a term of years of probation. The court suggested

that the fine would be a condition of probation. Defense counsel agreed but said, "Procedurally, I don't know what we are able to do here." The following ensued:

COURT: What we're doing is we're waiving the jury's right to determine the time of the probation.

DEFENSE: Correct.

COURT: You are waiving that by giving it to the court.

DEFENSE: Right.

After a brief conference away from the bench, the State advised the court that it and the defense were amenable to a ten–year term of probation with the fine as a condition. The court asked if it was necessary to give the matter back to the jury, and defense counsel said it was not. The court asked, "We're going to call this a condition and ten years as a term and we're going to let them go?" Defense counsel agreed, and the court set a hearing date for the purpose of determining the conditions of probation and how Barfield was going to pay the fine.

Before the date of the sentencing hearing, Barfield filed a motion to rescind the sentencing agreement he had reached with the State. Specifically, Barfield asked the court to impose only the jury's sentence of a fine rather than the alternative sentence of probation. He argued that "for the court to impose a term of years of probation, even a term that is agreed upon by the defendant, *after* a jury has reached a verdict and presented that verdict to the court would be improper as such a term of probation would be in excess of the sentence imposed by the jury." (Emphasis in original.) The court denied Barfield's motion to rescind the sentencing agreement and entered a sentencing order reflecting that Barfield

8

was to serve ten years' supervised probation and pay a fine of $3,500 as a condition of his probation.

## B. Analysis

We begin by recognizing that in Arkansas, sentencing is entirely a matter of statute. *Phillips v. State*, 2017 Ark. App. 320, 525 S.W.3d 8; *Valencia v. State*, 2016 Ark. App. 176. In jury trials, Arkansas utilizes a bifurcated sentencing procedure; the jury first hears evidence relevant to the charges against the defendant and then retires to reach a verdict on those charges. Ark. Code Ann. § 16-97-101(1) (Repl. 2016). If the defendant is found guilty, the jury then hears additional evidence relevant to sentencing on those charges, and then, after being instructed on the law, the jury retires again to determine a sentence within the statutory range. Ark. Code Ann. § 16-97-101(2)–(3). The circuit court followed this statutory procedure, as set out above.

Pertinent to this appeal, Arkansas Code Annotated section 16-97-101(4) states that when a defendant requests an instruction on alternative sentencing,

> [t]he court, in its discretion, may also instruct the jury that counsel may argue as to alternative sentences for which the defendant may qualify. The jury, in its discretion, may make a recommendation as to an alternative sentence. However, this recommendation shall not be binding on the court[.]

As set out above, that is what happened in the instant case: The court instructed the jury that Barfield might ask for an alternative sentence of probation; the jury recommended probation; and the court exercised its discretion to accept that recommended sentence. Our standard of review of the decision to allow alternative sentencing is whether the circuit court abused its discretion. *Vanesch v. State*, 343 Ark. 381, 37 S.W.3d 196 (2001).

9

Barfield argues that the circuit court abused its discretion in both accepting the jury's recommended sentence of probation and imposing a fine. He maintains that the court lacked the authority to fix his punishment as anything other than the verdict imposing the fine. Citing Arkansas Code Annotated section 5-4-103(b), he contends that the circuit court has the authority to fix punishment only in five enumerated circumstances,[4] none of which, he claims, exist here. He acknowledges that after the jury rendered its sentencing verdict, there was an agreement between the defense and the State that was accepted by the court. He nonetheless argues that the "trial court lost jurisdiction to impose any sentence that altered from the jury sentence, which was legal and valid on its face."

In support of his argument, Barfield cites *Donaldson v. State*, 370 Ark. 3, 257 S.W.3d 74 (2007). In that case, after Donaldson was convicted of a Class D felony, the jury recommended a sentence of zero years' imprisonment, a fine of zero dollars, and an alternative sentence of three years' probation. The circuit court rejected the jury's verdict and sentenced Donaldson to three years' imprisonment. The supreme court reversed the circuit court's sentencing order, holding that the jury's verdict of zero years' imprisonment and a fine of zero dollars was a proper and valid sentence for a Class D felony. The court concluded that none of the exceptions to jury sentencing set out in section 5-4-103 applied,

---

[4]The court shall fix punishment in any case in which (1) the defendant pleads guilty to an offense, (2) the defendant's guilt is tried by the court, (3) the jury fails to agree on punishment, (4) the prosecution and the defense agree that the court may fix punishment, or (5) a jury sentence is found by the circuit court or an appellate court to be in excess of the punishment authorized by law.

and the circuit court therefore imposed an illegal sentence when it rejected the jury's valid verdict and sentenced Donaldson itself. *Donaldson*, 370 Ark. at 8, 257 S.W.3d at 78.

We find *Donaldson* to be inapposite. Here, the circuit court did not take it upon itself to reject the jury's verdict and impose a sentence of its own devising. Instead, the court accepted the jury's alternative sentencing recommendation of probation and took into account the jury's decision that Barfield ought to pay a fine; as such, the court imposed the alternative sentence of probation and made the payment of the fine a condition thereof.

We conclude that these facts are governed by *Sullivan v. State*, 366 Ark. 183, 234 S.W.3d 285 (2006). There, Sullivan was convicted of first-degree assault, first-degree terroristic threatening, second-degree domestic battery, and first-degree false imprisonment. The circuit court allowed Sullivan to argue for an alternative sentence pursuant to section 16-97-101. After hearing evidence during the sentencing phase, the jury recommended sentences of six months in the county jail for first-degree assault; a $1,000 fine for terroristic threatening or, alternatively, five years of probation; and a $1,000 fine for the battery and false imprisonment or, alternatively, a term of ten years as a suspended sentence. The circuit court ultimately sentenced Sullivan to six months in the county jail for first-degree assault; ten years suspended and a $1,000 fine for the battery and false imprisonment; and five years' probation and a $1,000 fine for terroristic threatening. Sullivan appealed, arguing the circuit court could not sentence him to both the "original" sentence of a fine and the alternative sentence of probation. *Sullivan*, 366 Ark. at 184, 234 S.W.3d at 286–87.

On appeal, the supreme court disagreed with Sullivan, holding that

once a trial court imposes a suspended or probationary sentence, the trial court is authorized to require the defendant to "satisfy any other conditions reasonably related

11

to the rehabilitation of the defendant and not unduly restrictive of his liberty or incompatible with his freedom of conscience." Ark. Code Ann. § 5-4-303(c)(10) (Repl. 2006). *See also Cavin v. State*, 284 Ark. 363, 681 S.W.2d 913 (1984) (a fine of $10,000 imposed as a condition of a suspended sentence). Further, under Ark. Code Ann. § 5-4-301(d)(1) (Repl. 2006), when the trial court suspends the imposition of a sentence or places the defendant on probation, the court shall enter a judgment of conviction only if the court sentences the defendant to pay a fine and suspends imposition of sentence as to imprisonment or places the defendant on probation. *See Harmon v. State*, 317 Ark. 47, 876 S.W.2d 240 (1994) (noting that a plea of guilty, coupled with a fine and a suspension of imposition of sentence of imprisonment constitutes a conviction); *Jones v. State*, 297 Ark. 485, 763 S.W.2d 81 (1989) (trial court fined the appellant $750 and suspended imposition of the sentence of imprisonment; this court noted that "[a]fter such a sentencing procedure the trial court correctly entered a judgment of conviction").

We conclude that, in the instant case, the trial court accepted the jury's recommended alternative sentences of probation and suspended sentences, and then imposed the fines as a condition of those sentences. There was no error in the court's decision to do so.

*Id.* at 186–87, 234 S.W.3d at 288.

This is precisely what happened in the instant case. At the sentencing hearing, the circuit court expressly advised Barfield that the fine was a condition of his probation, and the document setting out the conditions of Barfield's probation likewise makes it clear that payment of the fine is a condition of probation. Under the instruction of *Sullivan*, we cannot conclude that the circuit court abused its discretion in accepting the jury's recommended alternative sentence of probation and imposing the fine as a condition of that sentence.

Finally, Barfield argues in the alternative that the circuit court erred in accepting the sentencing agreement after the jury reached its verdict because he did not waive his right to be tried by a jury. We can find no merit in this argument because Barfield was, in fact, both tried and sentenced by a jury. To the extent that he argues that his "jury waiver" was improper under Arkansas Rule of Criminal Procedure 31.2, we also cannot agree. Rule

12

31.2 provides that if a defendant wishes to waive his right to trial by jury, he may do so either personally in writing or in open court, or through counsel if the waiver is made in open court and in the presence of the defendant. If Barfield is suggesting that his acquiescence to the agreement worked out between the State and defense counsel to accept the court's decision to impose ten years of probation was a "waiver," then it was done in accordance with this rule. As noted above, after the State and defense counsel conferred with the court about who would set a term of years for the probationary sentence, defense counsel spoke with Barfield, who advised that he was "fine if [the court] want[s] to release the jury and have the court determine what the term of probation would be." We find no error in how this was accomplished.

Affirmed.

GRUBER, C.J., and VAUGHT, J., agree.

*Dusti Standridge*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Rachel Kemp*, Senior Ass't Att'y Gen., for appellee.