Cite as 2025 Ark. App. 318

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CR-24-252

| | |
|---|---|
| | Opinion Delivered May 21, 2025 |
| JA'MONTE DESHUN WASHINGTON APPELLANT | |
| | APPEAL FROM THE JEFFERSON COUNTY CIRCUIT COURT |
| V. | [NO. 35CR-20-441] |
| STATE OF ARKANSAS | HONORABLE ROBERT H. WYATT, |
| APPELLEE | JR., JUDGE |
| | |
| | AFFIRMED |

**STEPHANIE POTTER BARRETT, Judge**

Ja'Monte Washington was charged by criminal information in Jefferson County with capital murder in the May 2020 death of Jyrimee Thompson; the State alleged that he was subject to a firearm enhancement due to the use of a gun during the commission of the offense. A jury convicted Washington of first-degree murder and sentenced him to thirty years' imprisonment but declined to find him guilty of the firearm enhancement. Washington argues on appeal that the circuit court erred in denying his motion for directed verdict and in accepting inconsistent jury verdicts. We affirm.

I. *Sufficiency of the Evidence*

Washington first argues that there was no substantial evidence that he fired a gun or that the bullet that killed Thompson was fired by him. In his directed-verdict motion, Washington argued that mere presence at the scene is not sufficient and that no witness

could say that he shot a weapon or that he had gunshot residue on his clothes. Much of Washington's argument on appeal focuses on the fact that there were two types of shell casings found in the debris field indicating two shooters, and even if he had fired a gun, it could not be determined that he was the person who fired the bullet that killed Thompson. This argument is not preserved for appellate review because it was not made to the circuit court. A party is bound by the nature and scope of the objections and arguments made at trial and may not enlarge or change those grounds on appeal. *Gladden v. State*, 2025 Ark. App. 78, 706 S.W.3d 741.

However, Washington did preserve his argument that there was insufficient evidence presented at trial to show that he fired a gun. A motion for directed verdict at a jury trial is considered a challenge to the sufficiency of the evidence. *Marbley v. State*, 2019 Ark. App. 583, 590 S.W.3d 793. In reviewing a challenge to the sufficiency of the evidence, this court views the evidence in the light most favorable to the State and considers only the evidence that supports the verdict. *Barfield v. State*, 2019 Ark. App. 501, 588 S.W.3d 412. We will affirm a circuit court's denial of the directed-verdict motion if there is substantial evidence, either direct or circumstantial, to support the verdict. *Marbley*, *supra*. Substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other without resorting to speculation and conjecture. *Barfield*, *supra*. Circumstantial evidence may provide the basis for a conviction if it is consistent with the defendant's guilt and inconsistent with any other reasonable basis, and the jury is entitled to draw any reasonable inference from circumstantial evidence to the same extent that it can

2

be drawn from direct evidence. *Graham v. State*, 2025 Ark. App. 81, 704 S.W.3d 912. We defer to the jury's determination on the matter of witness credibility; the jury may resolve questions of conflicting testimony and inconsistent evidence and may choose to believe the State's account of facts rather than the defendant's. *Id.* Jurors do not, and need not, view each fact in isolation; rather, they may consider the evidence as a whole. *Id.*

A person commits murder in the first degree if, "with the purpose of causing the death of another person, the person causes the death of another person[.]" Ark. Code Ann. § 5-10-102(a)(2) (Supp. 2019). "A person acts purposely with respect to his or her conduct or a result of his or her conduct when it is the person's conscious object to engage in conduct of that nature or to cause the result[.]" Ark. Code Ann. § 5-2-202(1) (Repl. 2013).

At trial, Detective Tamina Smith of the Pine Bluff Police Department testified that on May 20, 2020, she was called to Jefferson Regional Medical Center (JRMC) concerning a person who had presented at the hospital with a gunshot wound to his stomach and arm. Washington was the gunshot victim. Washington gave a statement that night, claiming that he was walking on 38th Street when he heard gunshots and realized that he had been shot.

After she left JRMC, Detective Smith responded to reports of a shooting at Village Green Apartments located on South Olive Street. Jyrimee Thompson, the deceased victim, was found in the driver's seat of a white Altima belonging to his girlfriend, Alissa Phillips. While canvassing the scene, Detective Smith found some leaves with blood on them in the vicinity of where the shots were fired at Thompson. She also learned that a dark-colored Malibu sedan was possibly involved in the shooting.

3

The officers who first arrived on the scene found a Glock 19 9mm containing live rounds of ammunition in an extended magazine on Thompson's lap. On May 26, Detective Smith obtained a warrant to search the white Altima; items discovered in the vehicle included a spent 9mm shell casing, a green leafy substance in an orange bag, a black cell phone, two metal fragments, and a red wallet. She obtained another warrant to allow her to take swabs of Washington's DNA for comparison to the blood found at Village Green Apartments.

Detective Smith conducted an interview with Washington on June 29. Washington again claimed that on May 20, he was walking on 38th Street waiting to be picked up by a friend, Jacob Holly; that as he was walking, he heard gunshots and realized that he had been shot; but he could not see who had shot him because it was too dark. Washington said that after he was shot, he flagged down an unknown male who took him to JRMC. Washington denied that he was at Village Green Apartments on May 20, and he could not explain why his blood was found there. While she was interviewing Washington, Detective Smith noticed that the vehicle he brought to the interview looked like the vehicle that had dropped him off at JRMC the night he was shot.

On July 2, Detective Smith obtained a warrant to search a black Malibu belonging to Deija Pipkins, Washington's girlfriend, that was believed to be involved in the shooting. Items recovered included an FC 9mm cartridge, a piece of mail with possible blood on it, and four swab samples. Detective Smith interviewed Pipkins, who told her Washington was

4

driving her car on May 20; when she recovered her vehicle the next day, she had to clean it because there was blood in it.

Cathy Ruhl, a retired crime-scene technician for the Pine Bluff Police Department, testified that Thompson had already been transported to the hospital when she arrived at Village Green. Ruhl was asked about what was described as a "debris field" in front of and to the left of the Altima in which she and another crime-scene technician found twenty-three shell casings; there were two different calibers—7.62 and 5.56. She also located leaves with a red substance, possibly blood, on them in the driveway. She admitted that she could not say who fired on Thompson.

Deija Pipkins testified that she had loaned her vehicle, a 2012 Chevy Malibu, to Washington on May 20. Later that night, Pipkins, who lived in Little Rock, received a phone call letting her know that Washington had been shot, that he was alive and at the hospital, and that she needed to pick up her vehicle in Pine Bluff. When she located her vehicle, she found blood on the steering wheel and gear shift; she presumed the blood was Washington's. She drove the vehicle back to Little Rock and cleaned off the blood the following day.

Christopher Glaze, a forensic DNA analyst at the Arkansas State Crime Laboratory, testified that he was able to determine that both the DNA from the blood found on the leaves and the DNA from the blood found on the envelope in Pipkins's vehicle were consistent with Washington's DNA.

The evidence presented at trial showed that two guns had been fired at Thompson. Shortly after the shooting at Village Green, Washington was taken to JRMC with gunshot

5

wounds; a security-camera video shows Washington being quickly dropped off by someone in a dark sedan that resembled Washington's girlfriend's vehicle. Although Washington gave police a statement that he was shot by an unknown individual on 38th Street, and he was taken to the hospital by an unknown person, his blood was found where it was determined the shooters had been standing at Village Green. Pipkins's vehicle contained blood that was later determined to be Washington's blood.

Even though circumstantial, the evidence shows that two shooters fired on Thompson. Although he denied being at the Village Green Apartments at the time of the shooting, Washington presented at JRMC with a gunshot wound shortly after the shooting occurred at Village Green. Furthermore, it was determined through DNA testing that Washington's blood was present at the Village Green shooting scene, contrary to the statement Washington gave police. Efforts to evade detection and lying to police about one's involvement in a crime can be considered evidence of consciousness of guilt. *Bailey v. State*, 2021 Ark. App. 38, 615 S.W.3d 763. We hold that this evidence is sufficient to support Washington's conviction for first-degree murder.

Washington's second point on appeal is that the circuit court erred when it accepted inconsistent verdicts from the jury on whether he used a firearm in the commission of the murder when it acquitted him on the firearm-enhancement charge. He argues that the State's theory on first-degree murder was that he used a firearm to shoot and kill Thompson, and the State's theory on the charge of the firearm enhancement was based on the same facts. Although he acknowledges that he failed to object to the inconsistent verdicts at trial

6

or in a posttrial motion, Washington asserts that our supreme court "has allowed decisions issues [sic] which are fundamental in nature to the fairness of the trial, and where there is a constitutional argument that can be raised the first time on appeal."

We hold that Washington's inconsistent-verdict argument is not preserved for appellate review. In *McDaniel v. State*, 2015 Ark. App. 714, this court held that an inconsistent-verdict argument that was not made to the circuit court was not preserved and that the third exception to the contemporaneous-objection requirement set forth in *Wicks v. State*, 270 Ark. 781, 606 S.W.2d 366 (1980), in which a circuit court should intervene on its own motion to correct a flagrant and highly prejudicial error, was not applicable under that circumstance.

Even if the argument had been preserved, we would affirm. Washington acknowledges that our supreme court held in *Smith v. State* that "a defendant may not attack his conviction on one count because it is inconsistent with an acquittal on another count. . . . [T]he jury is free to exercise its historic power of lenity if it believes that a conviction on one count would provide sufficient punishment." 346 Ark. 48, 54, 55 S.W.3d 251, 255 (2001) (quoting *McVay v. State*, 312 Ark. 73, 77, 847 S.W.2d 28, 30 (1993)). *See also Mercouri v. State*, 2016 Ark. 37, 480 S.W.3d 864 (a defendant may not attack a conviction the basis of inconsistent jury verdicts). Washington asserts that this court should reconsider that position. However, this court has no authority to overrule decisions made by the supreme court. *Roark v. State*, 46 Ark. App. 49, 876 S.W.2d 596 (1994).

Affirmed.

VIRDEN and MURPHY, JJ., agree.

*Knutson Law Firm*, by: *Gregg A. Knutson*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Brooke Jackson Gasaway*, Ass't Att'y Gen., for appellee.