Fisher testified that Farmer had threatened her before but nothing had ever happened, so she felt comfortable taking a nap after receiving the threatening messages. She woke up to Farmer beating on her door. Fisher told him to leave or she would call the police, but before she could do so Farmer kicked open the door, which flung her back. She said that Farmer came in with his flak jacket and AR-15 and started beating her with closed fists. She said that she was pinned underneath him and begged him to stop as he hit her on the legs, abdomen, and groin area. He also hit her on the head, slapped her, and held a knife to her cheek and threatened to disfigure her face. He called her names, told her that she was going to die, and when she told him that her children would be home soon, he said that they could die with her. Farmer also told her that he was going to take her belongings because she owed him money and asked where her AR-15 and television were.
Fisher testified that when Farmer went to get her gun, she ran across the street to tell her neighbor to call 911. She said that she then saw Farmer put her AR-15 in his *82 car and start to bring her television out to the car. Fisher took her AR-15 out of the car, but Farmer saw her and jerked it out of her hands and flung it in the yard. He then put her in a chokehold and dragged her back in the house. Fisher said that he again started hitting her and threatening to kill her, but he stopped and let go of her when he heard police sirens. Photos of Fisher's injuries were admitted into evidence, and she said that she had been diagnosed with a concussion.
The messages in State's exhibit 20 were then read to the jury. The lengthy conversation between Fisher and Farmer begins at 8:58 a.m. and consists of arguing about their relationship and other matters. The messages contain numerous threats sent by Farmer, including the following:
If you mouth my kid I will shove my thumb through your eye
I will bust your fucking teeth out today
I'm going to hurt you today
I'm going to kill you
I'm smashing your phone again
You face is going to be fucked up again
I'm going to take your stuff like you did mine
Goodbye tv's
Bringing my AR also
I'm ready to die, are you?
You don't realize how addicting beating the fuck out you has become ... I love it ... Almost as good as killing
They are going to call me the butcher
I'm going to have your tongue in a jar on my shelf
Call the cops ... I need a little challenge ... Then there will be blood everywhere
Loading my guns just in case
In the messages, Farmer tells Fisher that he will be coming to her house in a few hours and will get his money or the equivalent. When she replies that she will not be home and threatens to call the police, Farmer states, "Yeah I've never kicked a door in remember." Fisher testified that the exhibit accurately reflected the text conversation they had before Farmer came to her house. At one point in the conversation, Farmer tells Fisher to answer her phone and says that he has called her "over and over." Eight brief voicemail messages that Farmer left on Fisher's phone were played for the jury. In the messages, Farmer said that he was going to come to her house and kick in her door, that he was going to shut her mouth and hurt her bad, and that he was going to get his money and stuff back. Fisher testified that she did not owe him money and had not taken any of his belongings.
On cross-examination, after Fisher reaffirmed that the text messages admitted into evidence were an accurate and complete copy, the defense told her that it has a copy of the messages, and it "reads a little differently." At a bench conference, the defense said it intended to present impeachment evidence that the State's exhibit was not the full record of the text messages. After Fisher testified that there were additional messages exchanged between her and Farmer on the morning of January 4 that were not included in the State's exhibit, the defense argued that the authentication of the State's exhibit was no longer valid. The court replied that the exhibit had already been admitted and that it was now a credibility issue. The defense then attempted to authenticate an exhibit of its version of the text messages, which appeared to come from Farmer's phone. Fisher testified that the messages in the defense exhibit were additional messages that she exchanged with Farmer that were not in the State's exhibit. The court admitted the exhibit over the State's objections. At the conclusion of that day's testimony, *83 Farmer moved to strike State's exhibit 20 because Fisher authenticated it "with essentially what amounts to perjury." The court denied the motion as well as Farmer's subsequent motion for a mistrial based on the admission of the text messages.
When the trial resumed the following day, the defense's cross-examination of Fisher continued wherein she acknowledged certain text messages sent by her that were included in the defense's exhibit but missing from the State's exhibit. In addition to further texts about their relationship, these texts included messages sent by Fisher stating, "I'm going to keep your dick and put it on my shelf," "I want to break everything in your piece of shit trailer," and "You are white trash ... Just die already ... Nobody would care or miss you." The defense exhibit also included a lengthy text from Farmer accusing Fisher of destroying certain items at his home and telling her to return his things and the money she owed him.
On redirect examination, Fisher testified that after comparing both exhibits side by side, she recognized that each contained messages that had been deleted from the other exhibit. The court overruled the defense's objection that the State's exhibit should not be in evidence because Fisher admitted it was not authentic. Fisher then read through the exhibits together, identifying what was missing from each exhibit, and she acknowledged that she had deleted messages that painted her in an unfavorable light. Likewise, many of the threats made by Farmer in the State's exhibit were missing from the defense's exhibit. Fisher testified that she did not add any messages to the State's exhibit.
Farmer's ex-wife testified that Farmer had admitted to her that he had fought with Fisher over the phone and had punched her in the legs. She said that Farmer told her that before the incident, Fisher had messed up his house and stolen his steroids, but instead of telling the police about his steroids, he told them that she had stolen one of his guns that was already missing. Farmer's friend Jason Sandboothe was the sole witness for the defense. Sandboothe testified that on December 21, 2015, he and Farmer returned to Farmer's house, where they had earlier left Fisher, to find that Farmer's belongings had been strewn about the house and yard and that money, military items, and his AR-15 were missing. Sandboothe acknowledged on cross-examination that the police report reflected that a pistol, not the AR-15 had been stolen.
The jury found Farmer guilty of aggravated robbery, aggravated residential burglary, terroristic threatening, and domestic battery; he was found not guilty of aggravated assault on a family or household member. He was sentenced to twenty-two years' imprisonment, with all sentences running concurrent to the others. Farmer moved for a new trial based on the State's use of the text messages and voicemails. The circuit court denied the motion, and Farmer now appeals.
The decision whether to grant a new trial is left to the sound discretion of the circuit court, and it is not reversed in the absence of an abuse of discretion or manifest prejudice to the complaining party. Johnson v. State , 2017 Ark. 106, 515 S.W.3d 116. Farmer argues that a new trial is warranted because the text messages in the State's exhibit were admitted into evidence based on perjured testimony, and the State continued to rely on the text messages after Fisher admitted that they were not authentic. Farmer argues that the State's use of the text messages stripped away any pretense of a fair trial and irreparably prejudiced him before the jury.
*84 A document must be authenticated before it can be admitted as evidence. Duvall v. State , 2018 Ark. App. 155, 544 S.W.3d 106. Arkansas Rule of Evidence 901(a) provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Rule 901 further provides that the testimony of a witness with knowledge that a matter is what it is claimed to be is sufficient to authenticate evidence and also that appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances, can be used to authenticate evidence. Ark. R. Evid. 901(b)(1) & (4). We review the authentication of text messages for an abuse of discretion and do not reverse absent a showing of prejudice. Duvall , supra .
In Gulley v. State , 2012 Ark. 368, at 10, 423 S.W.3d 569, 576, the supreme court held that there was sufficient evidence to authenticate text messages from the defendant's phone as being authored by the defendant based on the content of the messages, the defendant's behavior consistent with the messages, and witnesses' testimony that they had been having a text conversation with the defendant. In Duvall , supra , this court held that there was sufficient circumstantial evidence to authenticate photographs of text messages on the victim's phone where the content of the messages suggested that the defendant did send or could have sent them and no direct proof undermined the messages' authenticity.
Here, at the time the State's exhibit was admitted into evidence, Fisher had testified that the messages were texts exchanged between her and Farmer before he arrived at her house. Farmer's mother had also testified that Farmer told her he had been having a "text fight" with Fisher before going to her house. The messages sent by Farmer included ones referring to his military service and ones talking about his son by name. Further, the messages contained statements by Farmer that were consistent with his subsequent behavior-specifically, that he was coming to Fisher's house with his guns and that he would kick her door in and beat her. Although Farmer had argued prior to trial that the text conversation may have been altered or fabricated, he presented no direct proof that undermined the messages' authenticity at the time the exhibit was admitted. Authentication requirements are satisfied if the circuit court, in its discretion, concludes that the evidence presented is genuine and, in reasonable probability, has not been tampered with or altered in any significant manner. Kauffeld v. State , 2017 Ark. App. 440, 528 S.W.3d 302.
Despite being armed with its own version of the messages from Farmer's phone, the defense did not use this evidence to object to the authentication of the State's exhibit before it was admitted into evidence and read to the jury. Instead, Farmer chose to wait until after the State's exhibit was admitted to use his version to impeach Fisher's credibility. When presented on cross-examination with what Farmer implied was the accurate and complete version of the text messages,[2] Fisher admitted that the State's exhibit was not *85 accurate and complete because she had deleted some of the messages. Contrary to Farmer's claim that the State failed to correct Fisher's false testimony, on redirect examination Fisher identified the messages she had deleted.
Under the circumstances presented here, we need not decide whether the circuit court erred in failing to strike State's exhibit 20. We hold that even if the circuit court did err in that regard, any error was harmless. The supreme court has said that even when a circuit court errs in admitting evidence, we will affirm the conviction and deem the error harmless if there is overwhelming evidence of guilt and the error is slight. Rodriguez v. State , 372 Ark. 335, 276 S.W.3d 208 (2008). To determine if the error is slight, we look to see whether the defendant was prejudiced by the erroneously admitted evidence. Id. Prejudice is not presumed, and we will not reverse a conviction absent a showing of prejudice to the defendant. Id. When the erroneously admitted evidence is merely cumulative, there is no prejudice, and a conviction will not be reversed for harmless error in the admission of evidence. Id.
Had the text messages not been admitted into evidence, overwhelming evidence of Farmer's guilt remained. Fisher testified that Farmer kicked in her door while armed with a gun, beat her with his fists, held a knife to her cheek, threatened to disfigure and kill her, and attempted to steal her gun and television. Fisher's testimony was corroborated by that of her neighbor and the police officers, as well as photographs of her injuries. Further, both Farmer's mother and his ex-wife testified that he had admitted to them that he had beaten Fisher. Had the text messages been struck after Fisher admitted on cross-examination that she had deleted some messages, the same evidence recounted above would still have existed to overwhelmingly prove Farmer's guilt as to aggravated robbery, aggravated residential burglary, terroristic threatening, and domestic battery in the third degree.[3] Furthermore, any risk of prejudice resulting from admitting or failing to strike the exhibit was slight. Farmer contends that we should conclude that "Fisher's perjury and altered messages could have affected the jury's judgment," but we are not left to speculate on this point. Farmer successfully impeached Fisher's credibility by exposing her false testimony to the jury. The inaccuracy of State's exhibit 20 was brought to light by the defense, and the jury was provided with the missing messages contained in the defense exhibit. Unlike the cases from other jurisdictions relied on by Farmer, the false testimony here was revealed to the jury at trial.
In his second point, Farmer argues that the admission of the voicemails denied him a fair trial because he was denied an adequate opportunity to investigate and prepare to defend against them. He contends that had the voicemails been timely disclosed, an expert could have been retained to challenge their authenticity. When a party fails to comply with a discovery rule, the court may exercise any of the following options: order that party to permit the discovery or inspection of materials not previously disclosed; grant a continuance; prohibit the party from introducing the material; or enter another order that the court deems proper under the circumstances. Ark. R. Crim. P. 19.7. It is within the circuit court's discretion which *86 sanction to employ. Hicks v. State , 340 Ark. 605, 12 S.W.3d 219 (2000). Farmer argues, however, that given the late disclosure and the importance of the evidence, simply permitting discovery was not an appropriate remedy.
A prosecutorial discovery violation does not automatically result in reversal. Id. The key in determining if a reversible discovery violation exists is whether the appellant was prejudiced by the prosecutor's failure to disclose. Id. Absent a showing of prejudice, we will not reverse. Id. When the State fails to provide information during discovery, the burden is on the appellant to show that the omission was sufficient to undermine the confidence in the outcome of the trial. Barnes v. State , 346 Ark. 91, 55 S.W.3d 271 (2001).
Here, the voicemails were disclosed to the defense on September 1; however, the defense did not bring the matter to the circuit court's attention until ten days later on the day the jury had been called and trial was scheduled to begin. As stated above, it is within the circuit court's discretion whether to exclude the evidence. Although the State may have committed a discovery violation, the defense cannot sit on that information for ten days before bringing it to the court's attention and then ask for a continuance on the day of trial. Assuming, without deciding, that the circuit court erred in admitting the voicemail messages, we again hold that any error was harmless. Even without the voicemails, the evidence of Farmer's guilt was overwhelming. Farmer's statements in the brief voicemails were testified to by Fisher and found within the text messages. Therefore, Farmer cannot show prejudice because the voicemails were merely cumulative. See Rodriguez, supra. Under these circumstances, we hold that the circuit court did not abuse its discretion in denying Farmer's motion for a new trial.
Affirmed.
Virden, J., agrees.
Whiteaker, J., concurs.

Farmer claims on appeal that Fisher authenticated the defense exhibit as a "genuine copy of the text conversation" and only reneged on her testimony the next day. However, Fisher never testified that the defense exhibit was a genuine, accurate, or complete copy of the text messages. The exhibit was admitted after she testified that it merely contained text messages she had sent Farmer.

See Ark. Code Ann. § 5-12-103(a)(1) (Repl. 2013); Ark. Code Ann. § 5-39-204(a)(1) (Repl. 2013); Ark. Code Ann. § 5-13-301(a)(1)(A) (Supp. 2017); Ark. Code Ann. § 5-26-305(a)(1) (Supp. 2017).