Cite as 2023 Ark. App. 212

# ARKANSAS COURT OF APPEALS
## DIVISION II
### No. CR-22-629

| | |
|---|---|
| NICHOLAS BURRIS<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br><br>APPELLEE | Opinion Delivered April 12, 2023<br><br>APPEAL FROM THE HOT SPRING COUNTY CIRCUIT COURT<br>[NO. 30CR-21-93]<br><br>HONORABLE CHRIS E WILLIAMS, JUDGE<br><br>AFFIRMED |

**STEPHANIE POTTER BARRETT, Judge**

Nicholas Burris was convicted by a Hot Spring County Circuit Court jury of one count of possessing a prohibited article, a Class B felony, and was sentenced to twenty years' imprisonment as a habitual offender. On appeal, Burris challenges the sufficiency of the evidence supporting his conviction, and he also argues that the circuit court erred in allowing the prosecutor to make improper comments during closing arguments regarding his failure to testify. We affirm.

Burris, an inmate incarcerated at the Ouachita River Correctional Unit (Ouachita River) in Malvern, Arkansas, was charged under Arkansas Code Annotated section 5-54-119(c)(1)(C) (Supp. 2021) with possessing a prohibited article. This subsection provides, "A person commits possessing a prohibited article if, being an inmate of a correctional facility

or in the custody of a correctional facility, the person knowingly possesses a controlled substance."

On November 2, 2020, Burris was incarcerated in the Arkansas Department of Correction but was housed in a Bowie County, Texas, facility. On that date, he was transferred to another Arkansas Department of Correction facility—namely Ouachita River. Lt. Cole McAnally, a correctional officer at Ouachita River, testified that on that day, he was tasked with performing property inventories on incoming transfers to the unit. Lieutenant McAnally explained that when an inmate is transferred between correctional facilities, his property is packed into a bag at the facility the inmate is leaving, and the bag is zip tied and transferred with the inmate to the receiving facility; after arriving at the new facility, the zip tie is cut off the bag in front of the inmate, and the property in the bag is inventoried.

Lieutenant McAnally testified that he removed the zip tie and opened Burris's bag in front of Burris. While performing the inventory, Lieutenant McAnally found a container of hair grease; when he opened the container to verify the contents, he discovered a cellophane-wrapped piece of paper containing a green leafy substance. Burris was placed in restraints and escorted to lock up, and he was given a form signed by Lieutenant McAnally indicating that the hair grease and the green leafy substance had been confiscated. The substance was delivered to the state crime lab for testing, where it was determined that the green vegetable material was 0.6468 grams of MDMB-4n-PINACA, a synthetic cannabinoid, a Schedule VI controlled substance.

2

After the State rested its case, Burris moved for a directed verdict on the possession-of-a-prohibited-article charge, arguing that the State "failed to present sufficient evidence from which a reasonable jury could conclude that [he] knowingly possessed a prohibited article." The circuit court denied Burris's motion, finding that was a factual issue for the jury.

Burris recalled Lieutenant McAnally as a defense witness. Lieutenant McAnally testified that the drug test administered to Burris when he was transferred to Ouachita River was negative. Burris introduced a copy of his personal-property inventory and asked Lieutenant McAnally why the container of hair grease was not listed on the inventory sheet; he explained that the inventory sheet only listed the personal property in Burris's possession, and because the hair grease had been confiscated, it was not listed on the inventory sheet. Burris rested his case after Lieutenant McAnally's testimony and renewed his motion for directed verdict, which was again denied.

Burris's first point on appeal is that the circuit court erred in denying his motion for directed verdict. A motion for directed verdict at a jury trial is considered a challenge to the sufficiency of the evidence. *Marbley v. State*, 2019 Ark. App. 583, 590 S.W.3d 793. In reviewing a challenge to the sufficiency of the evidence, this court views the evidence in the light most favorable to the State and considers only the evidence supporting the verdict. *Barfield v. State*, 2019 Ark. App. 501, 588 S.W.3d 412. We will affirm the denial of a directed-verdict motion if there is substantial evidence, either direct or circumstantial, to support the verdict. *Marbley*, *supra*. Substantial evidence is that which is of sufficient force

3

and character that it will, with reasonable certainty, compel a conclusion one way or the other without resorting to speculation and conjecture. *Barfield*, *supra*.

Burris argues, as he did below, that the State failed to present sufficient evidence from which the jury could reasonably conclude that he knowingly possessed a prohibited article—in this case, a controlled substance. He argues that the jury could only speculate as to what happened to his possessions in Texas before he was transferred, there was no proof that he had possession of the bag of his personal property in Texas, and the bag had not been in his possession at least since leaving Texas.

In order to be convicted of possession of a prohibited article under Arkansas Code Annotated section 5-54-119 (c)(1)(C), the State was required to show that Burris knowingly possessed a controlled substance while an inmate at a correctional facility. Burris does not contest that he was an inmate or that the substance found was a controlled substance. Rather, he argues that he did not knowingly possess the synthetic cannabinoid. Arkansas Code Annotated section 5-2-202(2) (Repl. 2013) defines "knowingly" as follows:

A person acts knowingly with respect to:

(A) The person's conduct or the attendant circumstances when he or she is aware that his or her conduct is of that nature or that the attendant circumstances exist; or

(B) A result of the person's conduct when he or she is aware that it is practically certain that his or her conduct will cause the result[.]

"Possess" is defined as "to exercise actual dominion, control, or management over a tangible object." Ark. Code Ann. § 5-1-102(15) (Supp. 2021).

Under Arkansas law, possession may be proved by actual possession or constructive possession. *Dougan v. State*, 2023 Ark. App. 75, 660 S.W.3d 375. Actual possession occurs when a defendant has physical possession of contraband; to prove constructive possession, the State is required to establish that the defendant exercised care, control, and management over the contraband. *Id.* A defendant's control over and knowledge of the contraband can be inferred from the circumstances, including the ownership of the property where the contraband is found and the improbability that anyone other than the defendant placed the contraband in the location. *Terry v. State*, 2018 Ark. App. 435, 559 S.W.3d 301. The jury is free to choose to believe the State's account of the facts rather than the defendant's account. *Robinson v. State*, 2017 Ark. App. 689, 537 S.W.3d 765. Furthermore, the jury is not required to abandon common sense, and it is entitled to draw reasonable inferences from the evidence. *Id.* Whether the evidence excludes every other hypothesis is a matter for the finder of fact to determine. *Id.*

As in *Dougan*, Burris did not physically possess the bag containing the controlled substance when it was discovered; therefore, the State was required to prove that he constructively possessed the container of hair grease where the controlled substance was found. Viewing the evidence in the light most favorable to the State, the testimony at trial established that Burris's personal property arrived at Ouachita River in a bag that had been zip tied shut at the facility Burris was transferred from in Texas; the zip tie was still intact when the bag arrived; Lieutenant McAnally opened the bag in front of Burris; the container of hair grease was in Burris's personal property that was removed from the bag; and the

5

controlled substance was discovered by Lieutenant McAnally when he opened the container for a visual inspection of the contents. Given this evidence, the jury could certainly reasonably infer that Burris knew of the presence of the controlled substance among his personal articles. We hold that substantial evidence was presented to support the finding that Burris knowingly constructively possessed the contraband.

Burris also argues that the circuit court erred in overruling his objection to the State's closing argument. During closing argument, the prosecutor stated:

> Now, I want you to—I hope you listened to what the Judge said when he's talked about the reasonable doubt. Reasonable doubt is not a mere possible or imaginary doubt. And I think that's what the Defense was trying to raise when they talked about, well, you didn't see who put it in the bag. They want to create an imaginary doubt or a possible doubt when there's no evidence of that.

Defense counsel objected, arguing that Burris had no obligation to present any evidence, and the prosecutor's statement violated his right to a fair trial and his Fifth Amendment right. The circuit court overruled the objection, stating:

> That's overruled. He is making argument. Ladies and gentlemen, attorneys are making argument in this case. And that is not facts. You're instructed that you are to apply the facts to the law. What his argument is is to give you some direction concerning the facts. But let me tell you, if his argument does not correlate to the facts, you will disregard it. Do you understand?

Burris argues that the prosecutor's choice of words during closing argument was "a veiled comment on [his] failure to testify or present any evidence" and that the denial of his objection "allowed the prosecutor to shift the burden to [Burris] to disprove the allegations when it is the State's burden to prove the allegations beyond a reasonable doubt." We disagree.

6

Closing arguments must be confined to questions in issue, the evidence introduced during trial, and all reasonable inferences and deductions that can be drawn therefrom. *Marbley*, 2019 Ark. App. 583, 590 S.W.3d 793. The circuit court is given broad discretion to control counsel in closing arguments and is in a better position to determine the possibility of prejudice by observing the argument firsthand. *Id.* This court will not interfere with that discretion absent a manifest abuse of discretion. *Id.*

In *Dean v. State*, 2021 Ark. App. 182, at 19 (citations omitted), this court explained:

> When a prosecutor is alleged to have made an improper comment on a defendant's failure to testify, the statements are reviewed in a two-step process. First, we determine whether the comment itself is an improper comment on the defendant's failure to testify. Even a veiled reference to the defendant's failure to testify is improper. The basic rule is that a prosecutor may not draw attention to, or comment upon, the defendant's failure to testify. This is to prevent the defendant from testifying against himself in violation of the Fifth Amendment. Second, if we determine that the prosecution's remark was not proper under this analysis, then we determine whether it can be shown beyond a reasonable doubt that the error did not influence the verdict.

The prosecutor's statements during closing argument were neither a comment on, nor a veiled reference to, Burris's failure to testify, and the comments did not shift the burden of proof to Burris. Expressions by the prosecutor attributable to the weight to be given the evidence are distinguishable from expressions commenting on the fact the defendant did not take the witness stand. *Id.* Here, Burris made much of the fact that it was unknown who placed the items in his bag before it was zip tied and placed on the bus with him. The prosecutor was merely arguing that the evidence showed beyond a reasonable doubt that the controlled substance was in Burris's belongings—wrapped and placed in a

7

container of hair grease—that were placed in a zip-tied bag that was transported with him to Ouachita River, where it was found when the zip tie was cut off and Burris's personal property was searched. Because there was no improper comment on Burris's failure to testify, it is unnecessary to proceed to the second step of the analysis.

Affirmed.

HARRISON, C.J., and MURPHY, J., agree.

*Gregory Crain*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Michael Zangari*, Ass't Att'y Gen., for appellee.