Cite as 2026 Ark. App. 190

# ARKANSAS COURT OF APPEALS
DIVISION I
No. CR-25-377

| | | |
|---|---|---|
| BLAKE WIMBERLY | | Opinion Delivered March 18, 2026 |
| | APPELLANT | APPEAL FROM THE GRANT COUNTY CIRCUIT COURT [NO. 27CR-23-70] |
| V. | | |
| STATE OF ARKANSAS | | HONORABLE STEPHEN L. SHIRRON, JUDGE |
| | APPELLEE | AFFIRMED |

**CASEY R. TUCKER, Judge**

Blake Wimberly appeals his convictions of two counts of manslaughter in the Grant County Circuit Court. In addition to asserting that the verdicts are not supported by sufficient evidence, Wimberly argues that the circuit court abused its discretion by (1) permitting a witness to testify in violation of the rule of sequestration; (2) restating the law regarding parole eligibility to correct a perceived mistake in the State's sentencing closing argument; (3) permitting the State to introduce evidence that Wimberly had a pending traffic warrant; (4) permitting the State to introduce a witness's 911 call; and (5) allowing the State to display a photo of each victim during the entirety of the trial. We affirm.

This case stems from a tragic car wreck that occurred in the early-morning hours of January 6, 2023. A southbound red Dodge truck collided head-on with a pharmaceutical-delivery van. The driver and only occupant of the van, sixty-one-year-old Randy Burks, and one of the two occupants of the truck, twenty-seven-year-old Dawson Whitmire, were killed

on impact. The other occupant of the truck was Wimberly, and he was seriously injured. On June 12, 2023, the State charged Wimberly with two counts of negligent homicide. The State later amended the charges to manslaughter. The case proceeded to trial on February 13, 2025.

The State's first witness was Alexander Chief of Police Tim Preator. He testified that on the night of January 5, 2023, he stopped a red Dodge Ram truck that was speeding and that he believed might be stolen. Wimberly was driving the truck, and Dawson Whitmire was in the passenger seat. When Preator asked Wimberly why he was driving in such a manner, Wimberly replied, "Well, my buddy just got this truck. We're out playing in it." Preator ran Wimberly's information through the state information system, and the system returned a report that Wimberly had a misdemeanor traffic warrant out of Grant County, and his license was suspended. Instead of taking him into custody, Preator told Wimberly, "[I]t's your lucky day. . . . Grant County is going to give you a court date." Preator proceeded to allow Whitmire, who owned the truck, to trade places with Wimberly and drive away. According to Preator, Wimberly was not swerving or changing lanes when he stopped him; the only issue with Wimberly's driving was that he was speeding.

Lacey McDougal testified next. She was driving south on U.S. Highway 167 toward Sheridan, Arkansas, at 3:00 a.m. on January 6 when a red truck sped up close to the back of her car, then swung wide when passing her. McDougal testified that the highway has five lanes: two southbound lanes, two northbound lanes, and a turning lane in the middle. She was driving in the outside southbound lane, and the red truck went all the way into the

2

turning lane to pass her. McDougal described it as driving "with no regard to the paint on the pavement." The truck continued in the turning lane instead of returning to one of the southbound lanes. McDougal continued behind the truck for two miles and saw the truck move left until it was in the far-left lane, which was a northbound lane. Thus, the truck continued south in a northbound lane. McDougal slowed down to put space between her and the truck due to her concern about how the truck was being driven. McDougal would lose sight of the truck from time to time due to the hills and dips in the highway, but the truck continued to travel south in the northbound lane. She then came to the top of a hill and could not continue due to a wreck, the debris from which was "rolling around and it took up all five (5) lanes and down the embankment." McDougal came to a complete stop and called 911.

The 911 audio recording was played for the jury over Wimberly's objection. In the call, McDougal told the operator that it looked like a truck was driving in the left-hand lane, going the wrong direction, and that she had seen the truck speed past her. She said a van was in the turning lane "facing now sideways with a bunch of stuff scattered all over the road," and she could not drive forward. McDougal told the operator that she did not see anyone moving around the vehicles on her side of the wreck. All the debris from the wreck was blocking the roadway. McDougal ended by saying an ambulance was needed.

The State admitted two photos McDougal took of the accident. Wimberly objected to the introduction of the report McDougal completed for the police. As a result, the court allowed the State to introduce only her diagram, which she had drawn in the report, of how

3

she observed the red truck driving. On cross-examination, McDougal agreed that sometimes drivers get sleepy and nod off, however, she did not think that was what happened in this case. She testified that the red truck continued traveling south in the northbound lane for two miles. She knew it was two miles because she drives Highway 167 every day and had measured the distance. She never saw any brake lights on the truck. McDougal was unable to see who was driving the red truck.

Ofc. Steven Williams, who worked for the Grant County Sheriff's Department at the time of the collision, testified next. He photographed the scene for the Department. Through Williams, the State entered six photographs of the accident, including photographs of the deceased victims, into evidence. Williams testified that Whitmire was in the passenger seat of the red truck, and his seatbelt was buckled. Williams agreed on cross-examination that the photos the State had admitted did not capture the view of the seatbelt around Whitmire. However, he maintained that he had seen Whitmire strapped in the seatbelt and had photographed that view.

Cpl. Todd Williams of the Arkansas State Police testified next. He marked the accident scene showing where the vehicles came to rest. His markings were used for accident reconstruction. The accident reconstruction occurred approximately ten days after the accident, but Williams returned to the scene periodically and refreshed his painted marks so they did not wear away in the interim. Williams testified that the truck and van hit nearly head-on, with the passenger headlight of the Dodge truck making impact with the passenger headlight of the delivery van. The rear of the vehicles would have gone up in the air, and

4

the van would have rotated and come down again. The truck rolled, eventually landing right side up. Williams testified that he viewed Whitmire's body crushed inside the truck at the accident scene. Whitmire was in the passenger seat, buckled into the seatbelt.

The Grant County Coroner, Michael Walton, testified next. He assessed Whitmire first and noted in his coroner's report that Whitmire's death was due to massive head trauma and internal injuries. Walton testified graphically about the obvious nature of the head trauma and so described it in his report. Walton assessed Burks next. He described Burks's injuries as numerous abrasions, lacerations, and internal injuries. He noted "massive internal injuries" as the cause of death.

Cpl. Jason Dooley of the Arkansas State Police testified that he conducted the accident reconstruction. His explanation of how the wreck occurred was consistent with Cpl. Todd Williams's testimony. He testified that although a black box was retrieved from the truck and he was able to obtain some data from it, he was not able to obtain any data helpful to his reconstruction. Dooley testified that in spite of the lack of data from the accident, the reconstruction was accurate.

Following Dooley's testimony, the State informed the court that it was about to rest, but it needed to recall Ofc. Steven Williams, who had testified earlier. Wimberly objected because the rule of sequestration (the rule) had been invoked, and Ofc. Steven Williams had remained in the courtroom following his testimony. The State replied that Williams would not testify about anything addressed by the witnesses who followed him; his testimony would

focus on Wimberly's location when he arrived on the scene. None of the other witnesses had testified on that subject. The court overruled Wimberly's objection.

When called back to the stand, Ofc. Steven Williams testified that he had seen Wimberly at the scene of the accident and identified him in the courtroom. He then testified that when he arrived on the scene, he saw Wimberly lying on the ground about twenty to twenty-five feet from the driver's side of the red truck. He thought a member of the Caney Creek Fire Department was assessing his condition. On cross-examination, Williams testified that he did not think the elderly man who was assessing Wimberly could have moved him. On the basis of his observation, he assumed Wimberly had been ejected from the truck.

The State closed, and Wimberly moved for a directed verdict on both manslaughter and the lesser-included offence of negligent homicide, arguing that there was no evidence that Wimberly was driving the truck; there was no evidence that Burks and Whitmire died as a result of the accident; and there was no evidence that Wimberly acted recklessly, e.g., he could have fallen asleep at the wheel. The court denied the motions. Wimberly did not call any witnesses and renewed his motions, which were denied a second time.

The jury found Wimberly guilty of two counts of manslaughter. Following the State's rebuttal closing argument during sentencing, the court called the attorneys to the bench, informing them that the State had misrepresented the law with regard to when Wimberly would be eligible for parole. Over Wimberly's objection, the court reinstructed the jury on when Wimberly would be eligible for parole. The jury fixed Wimberly's sentence at ten years

on each count, to run consecutively. The court sentenced Wimberly accordingly, and this timely appeal followed.

## I. *Sufficiency of the Evidence*

Wimberly argues that the evidence was insufficient to support his convictions in two regards: First, there was no proof he was the driver of the car. Second, even if he were the driver of the car, there is insufficient evidence that he was driving recklessly. We disagree with both claims.

When reviewing a challenge to the sufficiency of the evidence, we consider the evidence in the light most favorable to the verdict and consider only that evidence that supports it. *Martin v. State*, 2025 Ark. App. 344, 715 S.W.3d 535. We defer to the jury on matters of credibility. *Williams v. State*, 2025 Ark. App. 194, 712 S.W.3d 325. Jurors may consider the evidence as a whole rather than viewing each fact in isolation. *Brooks v. State*, 2024 Ark. App. 241, 687 S.W.3d 297. This court will affirm a judgment of conviction if it is supported by substantial evidence. *Id.* Substantial evidence is evidence of sufficient character and force that it will, with reasonable certainty, compel a conclusion without resorting to speculation or conjecture. *Id.*

## A. Evidence that Wimberly Was the Driver of the Truck

Wimberly overlooks the testimony of two key witnesses in arguing that the State did not present sufficient evidence that he was driving the truck that caused the accident. Ofc. Steven Williams, who photographed the scene, testified that he viewed the body of Dawson Whitmire and that he was buckled into the seatbelt on the passenger side of the vehicle.

7

Cpl. Todd Williams also testified about the location of Whitmire's body—he found Whitmire's body crushed inside the truck, still buckled in the passenger-side seatbelt.

In arguing that the State failed to present sufficient evidence that he was the driver of the truck, Wimberly asserts that, although Whitmore's body was found in the passenger seat, it could have been thrown there by the force of the collision. In making this argument, he claims that Burks, although undoubtedly driving the van, was found in the passenger seat of that vehicle. This statement is not supported by the testimony or photographs. When asked on cross-examination if Burks's body was pushed from the driver's seat to the passenger seat during the wreck, Ofc. Steven Williams answered, "Towards the center." He agreed Burks was pushed "toward the passenger side"—not into the passenger seat. The photograph of Burks in his van shows his body leaning from the driver's side of the van toward the passenger side. Considering the fact that two witnesses testified that they viewed Whitmire's deceased body buckled into the passenger seat, this particular argument by Wimberly defies logic.

The determination that Wimberly was the driver of the truck that caused the collision is supported by substantial evidence.

### B. Evidence that Wimberly Was Driving Recklessly

Wimberly contends that even if this court finds sufficient evidence that he was driving the truck, there is insufficient evidence that he was driving recklessly so as to support a conviction of manslaughter. He relies on the fact that there were no eyewitnesses to the accident and no evidence that he was intoxicated at the time. Neither eyewitnesses nor intoxication is a necessary element of proof in this case.

Arkansas Code Annotated section 5-10-104(a)(3) (Supp. 2025) provides that a person commits manslaughter if "[t]he person recklessly causes the death of another person." According to section 5-2-202(3)(A) (Repl. 2024), a person acts recklessly when that person consciously disregards a substantial and unjustifiable risk that the attendant circumstances exist or the result will occur. "The risk must be of a nature and degree that disregard of the risk constitutes a gross deviation from the standard of care that a reasonable person would observe in the actor's situation." Ark. Code Ann. § 5-2-202(3)(B).

The most salient evidence on whether Wimberly was driving recklessly came from the testimony of Lacey McDougal, who was driving in the outer southbound lane of Highway 167. She testified that the red truck drove up behind her at a high rate of speed, then crossed over another southbound lane and into the turning lane to pass her. Rather than returning to one of the two southbound lanes, the truck continued south in the turning lane before traveling to the far left outer northbound lane, where the truck continued southward. McDougal testified that she was so concerned about how the truck was being driven that she slowed to put space between herself and the truck. McDougal continued behind the truck for two miles before topping a hill and coming upon the wreck. The truck had continued traveling south in the northbound lanes the entire time, and McDougal never saw the truck's brake lights. In addition to McDougal's testimony, the accident reconstruction indicated that the truck was traveling south on the northbound side of the highway and that there was no evidence of an attempt to stop or swerve before it hit the van.

9

Both parties cite *Rollins v. State*, 2009 Ark. 484, 347 S.W.3d 20. Rollins was convicted of two counts of manslaughter after he caused a car accident. This court affirmed Rollins's conviction but modified the judgment to the lesser included offense of negligent homicide. The Arkansas Supreme Court disagreed with our conclusion—that the circuit court erred when it denied Rollins's motion for directed verdict as to manslaughter. At issue was whether Rollins's conduct had risen to the level of reckless as defined by the manslaughter statute. The facts in *Rollins* are similar to those in the case at bar in that witnesses in *Rollins* testified to seeing Rollins driving erratically immediately before the crash. Rollins had repeatedly driven up on the witnesses' bumper but would not pass them when they pulled over to allow him to do so. Eventually the witnesses turned off of the highway, allowing Rollins to continue ahead of them. When the witnesses pulled back onto the highway and continued to drive, they came upon a wreck involving Rollins's vehicle, which was obviously in the wrong lane. There was also evidence—as in the case at bar—that Rollins had not attempted to stop or swerve as he drove head first into the oncoming vehicle. In reversing this court's opinion and affirming the circuit court, the supreme court noted that evidence of impairment or intoxication is not necessary to sustain a conviction of reckless manslaughter. The court continued:

> Although Rollins argues that there was no proof that he consciously disregarded a risk, this court has repeatedly noted that intent is rarely provable by direct evidence. Since intent ordinarily cannot be proven by direct evidence, jurors are allowed to draw upon their common knowledge and experience to infer it from the circumstances.

10

2009 Ark. 484, at 11, 347 S.W.3d at 27 (citations omitted).  The court in *Rollins* found the evidence sufficient to support a finding of recklessness that supported the conviction of manslaughter. Likewise, the conviction of manslaughter in the present case is supported by substantial evidence of recklessness.

II. *Permitting the State to Recall a Witness in Violation of the Rule*

Wimberly argues that the circuit court abused its discretion by permitting the State to re-call Ofc. Steven Williams to the stand after he had watched other witnesses testify.  We disagree.

Arkansas Rule of Evidence 615 provides that at the request of a party, the court shall exclude witnesses from the courtroom so that they do not hear the testimony of the other witnesses.  The purpose of Rule 615 is to expose inconsistencies in various witnesses' testimony and to prevent a witness from shaping his or her testimony to fit with another witness's. *Lard v. State*, 2014 Ark. 1, 431 S.W.3d 249.  Exclusion is mandatory upon request by either party.  *Id.*  However, we will not reverse a circuit court's decision regarding Rule 615 absent a showing of prejudice.  *Id.*  Prejudice is not presumed.  *Johnson v. State*, 2017 Ark. App. 373, 523 S.W.3d 908.  In the absence of prejudice, we cannot say that the circuit court abused its discretion in allowing a witness to testify in violation of the rule.  *Martin v. State*, 22 Ark. App. 126, 736 S.W.2d 287 (1987).  The circuit court is more likely to abuse its discretion by excluding testimony than by admitting it.  *Cooley v. State*, 4 Ark. App. 238, 629 S.W.2d 311 (1982).

Wimberly contends that he suffered "massive" prejudice from the court's allowing the State to recall Williams after he had remained in the courtroom for the testimony of Cpl. Todd Williams, the coroner, Michael Walton, and Cpl. Jason Dooley. Wimberly takes the position that Ofc. Steven Williams was able to sit in the courtroom, assess any needed testimony that was lacking, and then provide that testimony upon recall to the stand. Wimberly takes this argument further by arguing that, absent Williams's testimony on his return to the stand, there would have been no proof that Wimberly was driving the truck. However, a review of the transcript reveals the fallacy in this argument.

Upon recall, Williams testified only to Wimberly's location on the ground about twenty to twenty-five feet from the truck. This added little—if anything—to the State's case. The State had already established that Wimberly was the driver through the initial testimony of Williams as well as that of Cpl. Todd Williams, each of whom testified that he had seen Whitmire buckled into the seatbelt of the passenger seat.

Further, Williams's testimony on recall did not overlap with that of the witnesses whose testimony he heard after he took the stand the first time. Thus, he was not molding his testimony to be consistent with theirs.

Under these facts we find that Wimberly was not prejudiced by the circuit court's allowing the State to recall Ofc. Steven Williams to the stand and cannot say that the court abused its discretion.

III. The Circuit Court's Clarification of the Law Regarding Parole Eligibility at the Conclusion of the State's Sentencing Phase Closing Argument

Wimberly asserts that the circuit court erred when it stopped the State's rebuttal closing argument during the sentencing phase of trial and explained the applicable parole-eligibility laws. He claims the court did so in a manner that encouraged the jury to give the maximum sentence. We do not find that the circuit court abused its discretion.

The circuit court did not interrupt the State's rebuttal closing argument; rather, it waited until immediately following its conclusion. The court then called counsel to the bench and expressed its concern that the parole-eligibility calculation as presented in the State's closing was a misstatement of fact. The State had informed the jury that Wimberly would become parole eligible on each of his sentences when he had served one-third of the time, approximately six and a half years. The court's concern was that this statement did not reflect that the law provides for the possibility that the one-third required time could be further reduced so that the individual could be parole eligible after serving only one-sixth of the sentence. The court did not want the jury to retire to deliberate the sentence "under a misconception of the facts." Wimberly objected to either the State's or the court's correcting the statement on parole eligibility. Over his objection the court informed the jury:

> Ladies and gentlemen of the jury, you have been presented with the instructions. I have read you the instructions and those are the law and that is what you are to abide by. However, there has been an incorrect statement made and I can't allow you to go back there under a misconception as to what the law is.
>
> The law is that an individual is eligible for parole after they serve one-third (1/3) of any term of imprisonment. However, that can be re ~ reduced by up

13

to – further, up to one-sixth (1/6) of any period that you impose. So that means that they would be eligible for parole, if they meet the requirements, as early as one-sixth (1/6) of the time that you impose. So that would be less than six and a half (6 1/2) years, if you gave him the maximum sentence, that he would be eligible for parole.

You need to read that instruction carefully, you need to follow the law, not any arguments of counsel or statements that may be incorrect on that. And, with that, I'm going to allow y'all to retire and consider your verdict. Bailiff, come and collect the instructions.

The jury retired to deliberate. Upon its return, it announced that it had fixed Wimberly's sentence at ten years on each manslaughter conviction, to run consecutively. The jury did not impose a fine on either offense.

The circuit court is given broad discretion in controlling closing arguments. *Burris v. State*, 2023 Ark. App. 212, 665 S.W.3d 259. This court "will not reverse the action of a trial court in matters pertaining to its control, supervision, and determination of the propriety of arguments of counsel in the absence of manifest abuse of discretion." *Swan v. State*, 2018 Ark. App. 468, at 1–2, 559 S.W.3d 778, 780 (affirming circuit court's refusal to give a curative instruction on burden of proof following the prosecution's rebuttal closing argument).

Wimberly does not argue that the court gave an incorrect instruction but rather that the court reinstructed the jury on the law on parole eligibility in a manner that encouraged the jury to give the maximum sentence. However, "[t]he giving of an instruction twice, if correct, could not work a reversal of the judgment because no prejudice could result to either

14

party by a repetition of a correct instruction." *Taggart v. Scott*, 193 Ark. 930, 104 S.W.2d 816, 818 (1937).

Even if the court had erred, we will not reverse absent prejudice. In order to show prejudice from error during the sentencing phase, "a defendant must demonstrate that the sentence was either outside of the statutory range or the maximum allowed." *Wilcoxon v. State*, 2022 Ark. App. 458, at 15–16, 655 S.W.3d 686, 697. Here, Wimberly was convicted of two Class C felonies. Thus, the jury could impose prison time of no less than three years and no more than ten years on each conviction and a fine of no more than $10,000 on each. Ark. Code Ann. §§ 5-4-401(a)(4) and -201(a)(2). The jury imposed the maximum prison time of ten years on each conviction. However, because it did not impose a fine, it did not give the maximum sentence. Therefore, Wimberly cannot show prejudice from the alleged sentencing-phase error. *See Woolems v. State*, 2024 Ark. App. 380, 690 S.W.3d 893 (stating that the appellant could not demonstrate prejudice because, although he was sentenced to the maximum years in prison, he was not sentenced to the maximum fine) and *Wilcoxon*, 2022 Ark. App. 458, at 16, 655 S.W.3d at 697 (affirming conviction and stating, "Because he was not also ordered to pay a fine, Wilcoxon was not sentenced to the maximum sentence allowable for the offense.").

IV. *Evidence of Wimberly's Pending Traffic Warrant and Suspended License*

Wimberly contends that the circuit court abused its discretion in allowing the State to elicit evidence that he had a misdemeanor traffic warrant and that his license had been

suspended.  The State maintains that Preator's testimony on this subject was part of the res gestae and thus admissible.

We review a circuit court's decision regarding the admission of evidence for an abuse of discretion.  *Tate v. State*, 2025 Ark. 186, 722 S.W.3d 516.  "An abuse of discretion is a high threshold that does not simply require error in the circuit court's decision but requires that the court acted improvidently, thoughtlessly, or without due consideration."  *Id.* at 3, 722 S.W.3d at 519.  We will not reverse a circuit court's evidentiary ruling absent a showing of prejudice.  *Id.*

Wimberly is correct that, generally, evidence of other crimes or wrongs is not admissible pursuant to Rule 404(b).  Rule 404(b) of the Arkansas Rules of Evidence provides:

> *Other Crimes, Wrongs, or Acts.*  Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

However, otherwise inadmissible evidence may be admissible under the res gestae exception. This court explained the res gestae exception to Rule 404(b) in *Ellis v. State*, stating:

> [T]he general rule is that evidence of other crimes by the accused, not charged in the indictment or information and not a part of the same transaction, is not admissible at the trial of the accused; however, evidence of other crimes is admissible under the *res gestae* exception to the general rule to establish the facts and circumstances surrounding the alleged commission of the offense. *Haynes v. State*, 309 Ark. 583, 832 S.W.2d 479 (1992); *Young v. State*, 269 Ark. 12, 598 S.W.2d 74 (1980). Under the *res gestae* exception, the State is entitled to introduce evidence showing all circumstances which explain the charged act, show a motive for acting, or illustrate the accused's state of mind if other criminal offenses are brought to light. *Haynes v. State*, *supra*. Specifically, all of the circumstances connected with a particular crime may be shown to put the

16

jury in possession of the entire transaction. *Haynes v. State, supra.* Where separate incidents comprise one continuing criminal episode or an overall criminal transaction, or are intermingled with the crime actually charged, the evidence is admissible. *See Ruiz & Van Denton v. State*, 265 Ark. 875, 582 S.W.2d 915 ( [1979] 1989); *Thomas v. State*, 273 Ark. 50, 615 S.W.2d 361 (1981); *Henderson v. State*, 284 Ark. 493, 684 S.W.2d 231 (1985). *Res gestae* testimony and evidence is presumptively admissible. *Henderson, supra; Lair v. State*, 283 Ark. 237, 675 S.W.2d 361 (1984); *Love v. State*, 281 Ark. 379, 664 S.W.2d 457 (1984); *Hobbs v. State*, 277 Ark. 271, 641 S.W.2d 9 (1982).

101 Ark. App. 20, 21–22, 270 S.W.3d 377, 379 (2007) (quoting *Gaines v. State*, 340 Ark. 99, 110, 8 S.W.3d 547, 554 (2000)). We have recognized a broad scope of evidence as admissible under the res gestae exception. *Thessing v. State*, 365 Ark. 384, 230 S.W.3d 526 (2006). "The doctrine provides context to the crime and places the jury in possession of the entire transaction." *Adams v. State*, 2021 Ark. 34, at 9, 617 S.W.3d 249, 254. Res gestae is presumptively admissible. *Id.*

We find that Preator's testimony falls under the res gestae exception to Rule 404(b). The events that led to the fatal wreck in this case did not just begin at 3:00 a.m. on January 6, 2023. Preator's testimony put the entire night of the accident, beginning on January 5, in context. He stopped the truck partially because it was speeding. Wimberly was driving at that time. When asked why he was speeding, Wimberly explained that Whitmire's truck was new and they were "playing." Preator had Whitmire take over driving at that time because Wimberly's license was suspended due to a misdemeanor traffic warrant. The fact that Wimberly's license came up in the information system as suspended provided the reason Preator directed Whitmire to take over driving. Preator then sent the young men on their way with Whitmire behind the wheel, which played into Wimberly's position that the State

17

did not prove he was behind the wheel when the wreck occurred. This information sets the stage for what unfolded in the wee morning hours of January 6. It also provided background for the factual issue of who was driving the truck at the time of the accident, which was a highly contested issue.

Wimberly argues that even if the evidence of his outstanding traffic warrant and suspended license were otherwise admissible, such evidence was unduly prejudicial—that the prejudice of such evidence outweighed any probative value and thus should have been excluded. Arkansas Rule of Evidence 403 provides for the exclusion of relevant evidence if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. This court has explained:

> A decision to admit or exclude evidence is within the sound discretion of the circuit court. *Rounsaville v. State*, 374 Ark. 356, 288 S.W.3d 213 (2008). Evidence offered by the State in a criminal trial is likely to be prejudicial to the defendant to some degree, otherwise it would not be offered. *Id.* Nevertheless, the evidence should not be excluded under Rule 403 unless the defendant can show that the evidence lacks probative value in view of the risk of unfair prejudice. *Decay v. State*, 2009 Ark. 566, at 9, 352 S.W.3d 319, 327.

*Williams v. State*, 2016 Ark. App. 507, at 5, 505 S.W.3d 234, 237. Even if evidence is relevant under Rule 404(b), it may be excluded if its probative value is outweighed by the danger of unfair prejudice. *Anderson v. State*, 2023 Ark. App. 397, 675 S.W.3d 453. Once it is determined that Rule 404(b) applies to allow evidence of other crimes, the evidence must be independently relevant, and its probative value must not be substantially outweighed by the danger of unfair prejudice in order to be admissible. *Doll v. State*, 2020 Ark. App. 153, 598 S.W.3d 47.

18

However, this court need not address whether the circuit court abused its discretion in admitting evidence when any error would be harmless. *Farmer v. State*, 2019 Ark. App. 148, 571 S.W.3d 78. When there is overwhelming evidence of guilt and the error is slight, we deem the error harmless and affirm the conviction. *Id.* "To determine if the error is slight, we look to see whether the defendant was prejudiced by the erroneously admitted evidence. Prejudice is not presumed, and we will not reverse a conviction absent a showing of prejudice to the defendant. . . a conviction will not be reversed for harmless error in the admission of evidence." *Id.* at 12, 571 S.W.3d at 85 (citations omitted). Without addressing whether the court erred in admitting the evidence of the outstanding traffic warrant and suspended license, we determine that even if there was error, it was slight and not prejudicial to Wimberly. Overwhelming evidence of the reckless nature of his driving at the time of the accident was presented through McDougal's testimony and the accident reconstruction. In the face of this evidence, if the admission of evidence of Wimberly's suspended license due to misdemeanor traffic warrants was in error, it was harmless.

Additionally, the court gave a limiting instruction to the jury to not consider Preator's testimony that Wimberly's license was suspended for the truth of the matter asserted. Rather it was to be considered as the reason for Preator's actions. Wimberly argues on this point that the court's limiting instruction was insufficient to cure the prejudice of the admitted res gestae evidence. This issue is not preserved for appellate review. After determining the evidence was admissible as res gestae, the court offered to give a limiting instruction to the jury instructing it that the testimony was not to be considered for the truth of the matter

19

asserted but rather to show why Preator did what he did. Wimberly accepted the offered instruction, and the court so instructed, stating in part, "And so you can only take it for that purpose, not to prove a fact, for instance, that Mr. Wimberly's driver's license was suspended, for instance." After giving the instruction, the court asked Wimberly's counsel whether it was satisfactory and counsel answered yes. A party cannot agree with a court's action at trial and then argue on appeal that the court erred in that very action. *See Williams v. State*, 2020 Ark. App. 560, 613 S.W.3d 759. Thus, we do not address the sufficiency of the court's limiting instruction.

We disagree with Wimberly's depiction of the evidence of his misdemeanor traffic warrant and suspended license as the centerpiece of the State's case. Such evidence was simply part of the res gestae and not unduly prejudicial. We also disagree that the State's opening statement and closing argument made clear that the State offered the evidence in order to prove Wimberly had a propensity for reckless driving. Furthermore, Wimberly did not object to the parts of the State's arguments that he now argues constituted a misuse of evidence of Wimberly's past acts. We do not address issues raised for the first time on appeal. *Anderson v. State*, 353 Ark. 384, 108 S.W.3d 592 (2003); *Jackson v. State*, 2018 Ark. App. 222, 547 S.W.3d 753.

V. *Admission of McDougal's 911 Call*

Wimberly argues that the court erred in admitting McDougal's 911 call into evidence. He asserts on appeal that the call was hearsay; it was a prior consistent statement, and McDougal was present to testify; the call bolstered McDougal's testimony; there was no

20

evidence that McDougal did not recall the contents of the call; and the call was not an excited utterance. In the court below, Wimberly objected to admitting the 911 call only on the basis that it was a prior consistent statement and thus inadmissible as hearsay. Since this was the only argument raised below on this issue, it is the only one we will address on appeal. *See Oxford v. State*, 2018 Ark. App. 609, 567 S.W.3d 83.

Before the beginning of trial, Wimberly's counsel made a motion in limine to exclude McDougal's 911 call as hearsay because it was a prior consistent statement, and McDougal was present to testify. The State responded that the call was part of the res gestae and that McDougal did not recall exactly what she said to the 911 operator. The court denied Wimberly's motion in limine. Wimberly raised the objection again during McDougal's testimony, and the court again denied it. The 911 audio recording was entered in evidence and played for the jury. While it is true that the State did not elicit any testimony from McDougal that she did not recall the content of her call to 911, Wimberly did not object to this fact when it occurred. If he had done so, the court could have required the State to lay a proper foundation before allowing the recorded call.

A 911 recording may be relevant under the res gestae doctrine because as it shows circumstances surrounding the charged act. *Reid v. State*, 2019 Ark. 363, 588 S.W.3d 725. Even so, it may be excluded as unduly prejudicial. *Id.* Merely cumulative evidence, though, is not prejudicial, and the State is permitted to prove its case as conclusively as possible. Id.

In the present case, McDougal's statements to the 911 operator were repetitive of her testimony at trial. She told the operator that there was a truck driving in the left-hand lane

21

going the wrong direction and that the truck had sped past her.  She said there had been an accident, and a van was stopped sideways in the turning lane.  The contents of the van were strewn about and were blocking the highway.  McDougal said she did not see anyone from the vehicles moving about and that an ambulance was needed.

McDougal's call to 911 was cumulative of McDougal's testimony at trial.  As such, it was not prejudicial.  We do not find that the circuit erred in admitting the 911 recording.

VI. *The State's Displaying Photographs of Each Victim Throughout Trial*

Wimberly asserts that the circuit court erred in allowing the State to display a large photograph of each victim in front of the jury for the entire trial.  We do not find reversible error on this point.

Before trial, the State informed the court that it planned to display photographs of the victims pursuant to the In-Life Photograph Act codified at Ark. Code Annotated § 16-90-1116 (Supp. 2025).  Wimberly agreed that displaying the photographs was appropriate during the State's opening statement and closing argument but objected to the photographs remaining otherwise because they would be repetitive and prejudicial.  The State wanted to place the photos on an easel directly in front of a corner of the jury box, and Wimberly objected that they would practically be in the box with the jurors, which would be prejudicial.  The court stated that it was going to reserve ruling on Wimberly's motion.

The subject came up again after the jury was seated and before opening statements.  The court took a short break for the State to set up.  At that point, the court stated, "Regarding the displays, — so I'm going to let y'all address that at this point.  I told you that

22

I would allow them to be up during the openings and that we would consider that during the remainder of the trial." The court then asked Wimberly's counsel if he had anything related to that. Wimberly's counsel responded:

> Your Honor, seeing as where it's placed so close to the jury, where it's kind of right up in their face. As I stated earlier, I understand in opening and closing it should be appropriate, but I don't think during the actual testimony that it should be presented. I know it's entirely in the Court's discretion, but I don't want it to be pre — overly prejudicial to them hearing the case and thinking — being subjected to sympathy looking at their faces through the entire trial.

The court stated that it would allow the State to have the photographs where they were located close to the jury box during its opening but would not allow the photographs to be that close to the jury during the entire trial. The State then suggested an alternate location to which the photographs could be moved when they concluded their opening statements. The parties and the court tested the second location. Wimberly's attorney stated he wanted to make sure his client's view was not blocked by the display. After testing Wimberly's view with the photographs in the alternate location, the court consented to moving the photographs to that location at the conclusion of the State's opening statement and stated it would allow the display to remain in that location until it was tired of looking at the back of it. The record is then silent as to the in-life photographs until the State's closing argument when it directed the jury's attention to the photograph of each victim before the fatal crash.

Arkansas Code Annotated section 16-90-1116 provides for the displaying of a photograph of the deceased victim as he or she appeared before the crime. It states:

> (a) This section shall be known and may be cited as the "Arkansas In-Life Photograph Act".

23

(b)(1) In a homicide case, the state has a right to have a photograph depicting the deceased person as he or she appeared in life before the crime occurred admitted and displayed at trial during the state's case-in-chief, if the photograph is submitted by the prosecution and is a reasonable, accurate, and appropriate depiction of the deceased person, subject to Rule 403 of the Arkansas Rules of Evidence and any other rule or law.

(2) The court may limit the size of the photograph, the length of time the photograph is displayed, and give a limiting instruction to the jury as to the weight the photograph should be afforded.

This court has not directly addressed the application of this provision, so we turn to the statute itself and our well-established rules regarding the use of photographs at trial. The statute provides that the State may, during its case-in-chief, have admitted and display a photograph of the deceased person as he or she appeared in life before the crime occurred. The picture of the victim must be a reasonable, accurate, and appropriate depiction of the person. While the court may limit the size of the photograph, limit the length of time it is displayed, and give a limiting instruction, it is not required to do so under the statute. The admission of photographs is a matter left to the sound discretion of the circuit court. *Williams v. State*, 2017 Ark. 287, 528 S.W.3d 839. We will not reverse the circuit court's decision absent an abuse of discretion. *Id.*

In *Cagle v. State*, 68 Ark. App. 248, 6 S.W.3d 801 (1999), this court addressed the appellant's argument that allowing spectators to wear buttons bearing a photograph of the victim was erroneous. The court declined to address the issue because the buttons or photographs were not in the record. The court also observed that the record was silent as to the jurors' reactions to the buttons. The court stated that the appellant had not

24

demonstrated that the jury saw the badges or if they did whether their ability to be fair jurors was affected.

On the record before us we cannot say that the court abused its discretion. It is true that this case is distinguishable from *Cagle* in that the images of the victims in the case before us were not on buttons being worn by spectators but rather were displayed on an easel in front of the jury during at least part of the trial. However, we do not know anything about the sizes of photographs or whether the jury could still see them well after the easel was moved from its original location. And, we do not truly know if the photos were completely removed from the sight of the jury at some point during the trial and then returned before the State's closing argument. The State was permitted by statute to display the photographs during its case-in-chief, and Wimberly agreed to their use during the State's opening statement and closing argument.

Wimberly appears to assert that this court should reverse his convictions because the State wrongly appealed to the jurors' passions and prejudices by referring to the victims' in-life photographs during closing argument. To the extent he makes this argument, it is not preserved for appellate review because he did not make that objection at trial. Wimberly also argues that the court should have given the jury a limiting instruction regarding the images. However, he did not request a limiting instruction at trial, and a party's failure to request a limiting instruction precludes reversal on the basis of the circuit court's not giving one. *Kennedy v. State*, 244 Ark. 433, 42 S.W.3d 407 (2001).

On the record before us, we do not find reversible error regarding the use of the in-life photographs.

Affirmed.

HARRISON and WOOD, JJ., agree.

*Lassiter & Cassinelli*, by: *Michael Kiel Kaiser*, for appellant.

*Tim Griffin*, Att'y Gen., by: *James Hill*, Ass't Att'y Gen., for appellee.